[No. 5589.]

## LEWIS V. JEROME ET AL.

1. **Administration — Reopening**—Where justice requires, the court may vacate the order discharging an administrator and direct administration to proceed.—Pp. 466-471.

2. **Equity—Subrogation**—Husband, in his lifetime, contracted to purchase lands of plaintiff. He died before payment of the purchase money. The widow was appointed administratrix, and, with moneys apparently pertaining to the estate, paid the remainder of the purchase price; and both the vendor and the widow believing her to be the sole heir, the deed was executed to her, when, in fact, there were children of a former marriage residing in another state. These, knowing of the contract of purchase, and that the administratrix had returned the lands in her

inventory, and that the vendor had already conveyed them to her, concealed the fact of their rights until the estate was closed and the administratrix discharged, and then sued the vendor for the wrongful conveyance of the lands to the administratrix. In fact, the administratrix had paid debts of the deceased to a large sum which, in view of her supposed heirship, had never been allowed to her; and a large sum had been awarded to her by appraisers for her separate allowance, which had never been formally allowed by the court. Taking these sums into account, the administratrix was not in debt to the estate, and the moneys which she had paid to the vendor were her own moneys. Held, that the vendor might assert these facts in defense.—Pp. 466-471.

3. Pleadings — Amendment — A meritorious defense which comes to the knowledge of the defendant during the trial, may be presented by an amendment.—P. 466.

4. Estoppel by Conduct — Heirs of the decedent, knowing that the widow and administratrix believes herself to be the sole heir, conceal their rights and permit the administratrix to close the estate without procuring allowances which ought to be made to her. They will not be permitted to avail themselves of the advantage so acquired. The administratrix may reopen the estate and procure the proper allowance to be made.—P. 470.

*Appeal from Boulder District Court.*
*Hon. James E. Garrigues, Judge.*

Mr. C. M. CAMPBELL, for appellant.

Messrs. YOUNG & LEUTHI, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiffs, who are appellees here, as children and heirs of Benjamin A. Jerome, deceased, brought this action against the defendant Lewis, who is the appellant, to recover of him three thousand dollars as damages, which they claim to have sustained by reason of his wrongful act in selling and conveying to Kitty M. Jerome a certain forty-acre -tract of land, to a conveyance of which their father in his lifetime had secured the right by a contract entered into between him and defendant.

The answer admits the execution of the writing which, on its face, purports to be an agreement whereby defendant Lewis, for a consideration named, agree to convey the land in question, but avers that Jerome, though acting in his own name, was the agent, and made the contract for the sole use and benefit of his wife, Kitty M. Jerome, to whom defendant, after Jerome's death, made the conveyance, and that she, and not plaintiffs' ancestor, paid the entire consideration therefor; that the conditions of the contract to be kept by the proposed grantee were not performed during Jerome's lifetime, and that the contract had become forfeited as to him, but that after his death, and after his widow had been appointed and had entered upon her duties as administratrix of his estate, the defendant, waiving the forfeiture as to her, received from her a sum satisfactory to him; whereupon he conveyed to her the premises. It was also said that Mrs. Jerome, as administratrix of the estate, which had already been settled, had made an application in the appropriate county court for the purpose of setting aside the final settlement of the estate and reopening administration thereof, upon the ground that the settlement had been improperly procured by fraud practiced upon her. This particular defense was stricken out on plaintiffs' motion, and new matters in the answer were denied by a replication. The court impanelled a jury and submitted for their finding two questions of fact: (1) Whether plaintiffs are the lawful children of Benjamin A. Jerome, deceased? (2) What was the fair market cash value of the land in question, at the time of its conveyance by defendant to Mrs. Jerome? To these questions the jury answered that plaintiffs were the lawful children, and that the property was worth two thousand dollars. No specific findings of fact were made by the court upon

the other issues in the case, but it apparently found the issues generally for plaintiffs, as it gave judgment against defendant in the sum of one thousand dollars, being one-half the value of the property, which was the share to which plaintiffs, as heirs, would be entitled. Defendant appealed.

At the risk of some repetition, but in order fully to elucidate the merits of the controversy, we deem it fitting to state the situation of the parties as set forth in the pleadings, and the facts which the evidence tends to prove, without indicating the weight of that evidence or that it establishes all or any of the ultimate facts which will be recited. This precautionary statement is made since we are compelled to reverse the judgment and do not wish our comments upon the evidence unnecessarily to embarrass the lower court in its findings of fact at another trial.

Benjamin A. Jerome was a married man living with his wife and three children in the state of Missouri. These three children are the plaintiffs in this action. In 1880 Jerome came to Colorado. A few years afterwards his wife procured a divorce from him in the courts of Missouri, and about that time he was again married in Pueblo, Colorado, and shortly thereafter his divorced wife in Missouri remarried. Jerome and his second wife removed from Pueblo to Boulder county in the year 1894, and in December of that year a contract of purchase and sale was entered into between him and defendant Lewis, whereby, for an agreed consideration, evidenced by a small cash payment, and Jerome's note for the balance of the purchase price, Lewis agreed to convey a forty-acre tract of land. Jerome and his wife at once entered into possession and occupied the premises as their home until his death in June, 1899. In July of that year Mrs. Jerome, the wife, was appointed and entered upon her duties as ad-

ministratrix of the estate of her deceased husband.
At the time of his death Jerome carried a life insur-
ance policy in favor of his wife in the sum of two
thousand dollars, on which she realized fifteen hun-
dred dollars.    In the process of the settlement of the
estate the administratrix filed an inventory, in which,
as one item of assets, she listed under the head of
real property Benjamin A. Jerome's interest under
this contract of sale with defendant.    Appraisers
were appointed to appraise the value of the estate,
and appraisers also set apart or estimated the value
of the property to be allowed to Mrs. Jerome as her
widow's allowance in the sum of $987.    This award
seems not to have been formally made to her by an
order of the county court. · From time to time she
made sales of personal property of the estate, the
total of which amounted to $1,326.00.    Under the
belief that she was the sole heir and, as such,
entitled under our statute to the entire estate, and
acting upon the advice of her attorney, in order to
save expense, the administratrix paid various claims
of indebtedness against the estate, aggregating about
$800, without having the same filed in, or allowed by,
the county court in which the estate was being ad-
ministered.    She also paid $243 which was allowed
by the court as the expense of the administration.
The total amount of debts which she paid, including
those formally allowed, and those not filed, and the
expenses incurred in the administration, was about
$1,043.    If this sum was all the credit to which she
was entitled, there would be a balance against her
and to the credit of the estate of about $283.    For
the same reasons above mentioned the administra-
trix did not secure a formal allowance of her widow's
award of $987, but she never surrendered or waived
her right to the same. · If she was entitled to a credit
for widow's allowance and the amount of the debts

paid by her, but not formally approved and allowed by the county court, the entire assets of the estate would fall short several hundred dollars of meeting the same. If, however, she is entitled to credit herself only with the actual expense in administering the estate, and the amount of the claims which were allowed, and the funeral expenses which were paid, there would be a balance to the credit of the estate for distribution among the heirs, of which she herself was entitled to one-half, and the plaintiffs collectively to the other half of some amount, the exact sum not appearing from the record. The estate was finally settled and the administratrix discharged in August, 1900, and not until November or December following did the administratrix or defendant know of the existence of plaintiffs, or that Benjamin A. Jerome had ever been married before his marriage to Kitty M. Jerome in Colorado. When defendant conveyed to her, she then being the administratrix, she paid him the balance of the purchase price due under the contract of sale. The plaintiffs claim that this payment was made by the administratrix out of funds belonging to the estate, while she says it was her own money. In her testimony there is some uncertainty or apparent inconsistency as to where she obtained this money. In one place in her testimony she says that it was a part of the insurance money, and in another place that at least a portion of the payment came from the grantee to whom she conveyed the premises on the same day she obtained her conveyance from defendant. In legal effect, however, we think there is no doubt that, as between her and plaintiffs, this was a part of the money which she had received on the insurance policy. If any portion of it was obtained from her grantee, she at the time intended, as was, or might be, her right, to reimburse herself out of the same for a like or greater

amount of the insurance money which she had applied to the payment of the debts of the estate, or for the amount of the widow's allowance which never was formally set off to her. It is unquestioned that when defendant conveyed to Kitty M. Jerome, both he and she believed that she was not only the widow, but the sole heir at law of her deceased husband. Neither of them knew that Jerome had been married in Missouri or left surviving him children of the first marriage.

In the spring or summer of the year 1900, while Benjamin A. Jerome's estate was in process of administration, and several months before it was closed, and several. months after the conveyance by defendant to Mrs. Jerome, two of the plaintiffs in this case came to Boulder county, Colorado, to make an investigation as to the condition of the estate of their deceased father, consulting at that time with an attorney. If it does not appear directly, it is a fair inference from facts and circumstances in evidence, that they knew of this contract of purchase, and that it was listed as one of the assets of the estate, and that defendant Lewis had already conveyed the property to the administratrix. They did not then make known their presence, or their claim to an interest in the estate, either to defendant or the administratrix, and neither of the latter was apprised of such claim until after the estate was closed and the administratrix discharged, and not until this action was begun several months thereafter. Neither in their complaint, nor at the trial, did defendants offer to pay their portion, or any portion, of the purchase price under the contract of sale, but, as already stated, they based their rights to recover upon the asserted fact that the evidence discloses that the entire purchase price under this contract was paid by the administratrix out of the assets of the estate,

one-half of which belonged to them collectively. After the court had pronounced judgment in plaintiffs' favor, defendant filed a motion for new trial, and in connection therewith asked leave to file an amended answer, setting up an additional defense which, as we consider it very material, is somewhat fully stated. Defendant denominates it a plea of subrogation. He asserts therein that plaintiffs' presence in Colorado after defendant's conveyance to the administratrix, and before final settlement of the estate, when they ascertained the condition of the estate, and their concealment from defendant and the administratrix of their presence, and the furthering thereby of a settlement of the estate, without making known their claims as heirs, which caused the administratrix to settle the estate without procuring an actual set off of her widow's allowance, and an order approving her payments of the debts of the estate, whereas if plaintiffs had before final settlement made known such claim, defendant and she could and would have proceeded regularly under the statute in these respects, the result of which would have left the estate insolvent with no sums to be distributed to any of the heirs, in equity and good conscience ought to estop plaintiffs from asserting the claim which they make here as against the administratrix were she a party to the action; and that defendant, in equity, is entitled to be subrogated to, and has the right to assert in this action, all the defenses which the administratrix might set up were she a party. By affidavit the defendant shows, and it seems not to be controverted, that the facts constituting this defense were not known to him at the time of the filing of his answer, and not until the trial of the cause. The court denied the request to file the answer, overruled the motion for new trial, and entered judgment against the defendant in the sum of a thousand dol-

lars. Other facts of more or less importance were elicited at the trial, but we have not deemed it necessary in the view we take of the case to give them in detail, for we think that the facts stated require a reversal of the judgment for the reasons which we proceed to give.

While it does not directly appear what the court's findings were upon the issues of fact not submitted to the jury, but reserved for the determination of the court itself, we conclude, in view of the oral opinion which the court gave in pronouncing judgment, and which has been brought up in the record, that the court found against defendant, generally, including that defense of the answer which sets up that the contract of purchase was made for the use and benefit, not of Benjamin A. Jerome, but of his wife. In its opinion the court states that up to the time of the conveyance by defendant to Mrs. Jerome, neither of them knew of the existence of plaintiffs, but both supposed that she was the sole heir at law of Benjamin A. Jerome. It is altogether clear from that opinion that judgment went in favor of plaintiffs; because, in the settlement of the estate, admitted debts, which unquestionably the administratrix paid, had not been formally allowed, and because the widow's award had not been formally approved by the court and set off to her, as the statute requires; and for the additional reason that plaintiffs' conduct in concealing their heirship, as heretofore recited, does not operate as an estoppel. It is equally clear that if these formal orders had been made, as they properly should have been, the assets of the estate would have been insufficient to pay the just debts and the widow's allowance, and there would have been, instead of property to be distributed to the heirs, an insolvent estate. If, therefore, it had not been for this irregularity or noncompli-

ance with the statute on the part of the administratrix, who acted under the advice of her counsel, and upon the assumption that she was the sole heir at law, these orders would have been formally made. If this action had been against Mrs. Jerome, or if she had been a party to this action, it would not be just to permit this irregularity, which defendant offered to prove was the result of plaintiffs' inequitable conduct in concealing from the administratrix their heirship, to operate as a superior equity to hers. Yet the trial court held that since the administratrix, by reason of her failure to have entered the proper orders concerning the allowance of debts and the setting aside of the widow's award, was not entitled, as against the estate or the plaintiffs, to credits for the amount thereof, the defendant had no standing in this case to assert that there were no assets of the estate to which plaintiffs were entitled, and therefore the principle of subrogation did not apply, because Mrs. Jerome, as against the plaintiffs, had no rights to which defendant could be subrogated.

We think it already sufficiently appears to any reasonable mind that the judgment of the trial court resulted in a hardship to defendant to which he should not be subjected if a proper remedy can be afforded him in accordance with sound equitable principles. We apprehend that there is no legal difficulty in awarding the proper relief. It may be that the complaint itself tenders no equitable issue; but the answer certainly does, particularly that defense which defendant sought to present by way of amendment after the trial. That issue is that plaintiffs' inequitable conduct prevented the administratrix, who was defendant's grantee, from procuring the necessary orders which she would have obtained had plaintiffs seasonably advised her of the nature of

their claim of heirship, and that if plaintiffs had not
so conducted themselves, no harm would have re-
sulted to defendant, their sole reliance being upon
the asserted fact that property which legally and
equitably belonged to them had been received by
defendant through the administratrix for the pur-
chase price of the property. If such asserted fact
did not in law or equity exist, they would have no
right to recover in this action. When plaintiffs ap-
peared in Boulder county and learned the condition
of their father's estate, they knew that there had
been listed as one of its assets his interest in this
contract of purchase with defendant; they also knew
that, before they came to Colorado, defendant had
conveyed this property to their father's widow; they
also knew that appraisers had ascertained and certi-
fied to the court the amount of the widow's allow-
ance; they also knew the value of the estate as shown
by the appraisers; and they must have known that
the administratrix was proceeding in its settlement
upon the belief that she was the sole heir at law. If
at that time, or at any time before final settlement,
they had advised defendant or the administratrix of
their claim, it is fair to presume that the former
would and could have taken steps to correct the in-
formalities in the administration of the estate, and
would have and could have secured the allowance by
the court of the just claims and debts against the
estate which the administratrix had paid partly out
of its assets and partly out of her insurance money,
and that she would have secured a formal allowance
by the court for the amount of the widow's award.
They did not do this, however, but stood silently by
and concealed their claim of heirship until after the
estate had been settled and the administratrix dis-
charged, with the record in the condition to which we
have alluded. True it is that in the final report of

the administratrix, at its close, is the statement that plaintiffs are heirs of the estate, from which plaintiffs argue that she knew of their claim before her discharge. But in view of her testimony and that of her attorney, it is entirely clear that such statement was not in the report when it was signed and verified by the administratrix, and was not there until after it was filed in the county court; that she never authorized its insertion, and did not know of such statement, until after this action was brought. Instead of this circumstance being in favor of plaintiffs, we are of the opinion that it is against them, and tends strongly to prove that they purposely withheld from the administratrix and defendant their relation to the decedent to obtain an unfair advantage to themselves.

We think that upon these facts, assuming that there was evidence tending to prove them, plaintiffs would not, as against the administratrix, be entitled to assert the claim which they here make. That is to say, they would have no standing as against her to say that they were entitled to any assets of the estate, assuming that she could, if the opportunity was still open, secure an order for her widow's award and a formal order of allowance of the claims against the estate, which she has paid in large part out of her own money. As against defendant they ought not to be heard, if their election to postpone announcement of their heirship deprived him of the opportunity to protect himself, regardless of the assets of the estate. If either plaintiffs or defendant are to lose, plaintiffs, who are at fault, should bear the loss rather than defendant, whose good faith is apparent. If the administratrix could make such showing, and there certainly is evidence tending to substantiate her claim in that particular, the estate would be insolvent; and if so, it necessarily follows that no

money belonging to plaintiffs was used by the administratrix in paying to defendant the balance of the purchase price under the contract. Whether this equity which defendant seeks to set up by an amendment to the answer is technically the right of subrogation, we do not decide. It seems to us that it is an equity which he is entitled to assert and upon which he is entitled to be heard the same as if this action was against Mrs. Jerome. There is the same reason for an estoppel against plaintiffs, arising from their unconscionable conduct, after, as there would have been if it had occurred before, the conveyance. Plaintiffs chose to defer announcement of their heirship until after it was too late for defendant and the administratrix to protect themselves against the claim here asserted, when they might have imparted the information before final settlement, when such protection could have been secured. The principle upon which the estoppel is based is well illustrated in *Fallon v. Worthington*, 13 Colo. 559-571, and authorities there cited.

In conclusion we observe that there does not seen to have been any request by either party to have the administratrix brought into court. We think this request might well have been made, and that, in its absence, the court, in order to settle the entire controversy of all the parties affected, might, of its own motion, order her to be brought in. We do not reverse this case because she was not made a party, but suggest that in the event of a new trial, either party, or the court of its own motion, may make her a party. The court should also permit the respective parties to amend their pleadings as they may be advised, to correspond with the views stated in this opinion. In case Mrs. Jerome should be made a party, that portion of the answer which was stricken out, alleging that the administratrix had

made application to have the estate reopened, certainly ought to be retained; and if disposition has not already been made thereof, the district court might well postpone the hearing until final decision has been had by the county court upon that application. And if she is not made a party, that defense is material, provided it be also averred that she, in good faith, proposes to press such application.

The judgment is reversed and the cause remanded with instructions that if further proceedings be had they be in accordance with the views herein expressed.                   *Reversed and remanded.*

· CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.