[No. 3685.]

McCracken v. Montezuma Water & Land Company.

1. Constitutional Law.—*Maximum Rates for Use of Water.* Under sec. 8 of article 16 of the constitution, neither the legislature nor any court has power to fix a maximum rate for the delivery of water. The power is vested exclusively in the boards of county commissioners.

The board can act only on the petition for an interested party.

The rate fixed by the board, when acting within its jurisdiction, is binding upon all persons affected thereby until vacated by the decree of some court of competent jurisdiction.

The board is not charged with the duty of seeing that the prescribed rate is observed by the carriers of water.

2. —— *Presumptions.* It will be presumed, the contrary not appearing, that in prescribing a rate the board acted solely upon the evidence produced before it, without any mixture of improper motive, and that the evidence was sufficient to support the order.

3. —— *Prior Injunction—Effect.* A decree of the district court vacated an order of the county commissioners prescribing a rate of charge, and enjoined the board from enforcing or attempting to enforce the rate so prescribed.

Upon a second petition, and due notice given to all concerned, the county commissioners, after full hearing, prescribed the same rate set

down in the previous order so vacated. Held that the second order of the board was not to be regarded as a violation of the injunction, and, not being assailed by any direct proceeding, and no lack of jurisdiction or excess of authority being shown, the rate prescribed thereby became the lawful maximum rate binding all concerned.

4. Pleadings—*Amendment—Liberality to Be Indulged. Nisi prius* courts should be liberal in allowing amendments which may tend to secure a full investigation of the merits of the controversy whenever this can be accomplished without undue hardship upon, or prejudice to, the opposing party.

More liberality is indulged in permitting the amendment of answers than of complaints.

Six days before the day of trial application was made for leave to file an amended answer. The failure to apply at an earlier day was excused, and the amendment set up matters constituting a complete *prima facie* defense to the action. The application was denied.

On appeal, there being no showing that the failure to apply at an earlier day occasioned any inconvenience or prejudice to plaintiff, the denial of the application was held an error.

*Appeal from Denver County Court.* Hon. George W. Dunn, Judge.

Messrs. Melville, Sackett & Calvert, for appellant.

Mr. T. J. O'Donnell, and Mr. J. W. Graham, for appellee.

Hurlbut, J., delivered the opinion of the court.

October 2, 1909, appellee, as plaintiff, filed its complaint in the county court of the City and County of Denver, to recover from defendant (appellant) a judgment in the sum of $933.32 with interest, for balance alleged to be due for and on account of water delivered to defendant for irrigation purposes during the years 1903, 1904, 1905 and 1906 respectively.

The complaint contains four causes of action, claiming in each the sum of $333.33 for water delivered and services rendered in delivering the same for the year,

alleging such sum to be the reasonable value thereof; admitting, however, a payment thereon of $100 each year, or a total of $400. Judgment by default was rendered against defendant for the sum demanded in the complaint, which was afterwards vacated by the court, and leave granted defendant to answer.

Thereafter, on December 24, 1909, defendant filed his answer, admitting plaintiff to be the owner of the ditch or canal mentioned in the complaint, and that the water was furnished by plaintiff, at the request of defendant, at the times specified in the complaint; but denying each and every other allegation therein, except those alleging payment by defendant of $100 each of the years from 1903 to 1906 inclusive. The second, third and fourth defenses of the answer are about the same, except as to dates. They each allege a written contract between plaintiff and defendant, made prior to the irrigation season of 1902, whereby plaintiff was to carry and deliver 1 1/9 cubic feet of water per second of time, from the Dolores river to the lands owned by defendant, for the sum of $100, which defendant paid, and which contract price was not thereafter changed; that in the spring of 1903, 1904, 1905 and 1906, respectively, plaintiff's agent sent defendant a notice stating that $100 was due plaintiff from defendant in advance for delivering to defendant 1 1/9 cubic feet of water for the irrigation season of that year; that defendant paid the same and received from plaintiff a receipt therefor; that no further demand was made by plaintiff for furnishing water as aforesaid, up to the time this action was brought.

Replication was filed, denying (with some slight admissions) all new matters pleaded. Plaintiff recovered judgment, founded upon an instructed verdict which the court ordered the jury to return.

The first and second assignments of error relate to the action of the court in refusing to allow defendant to

withdraw his original answer and file in lieu thereof amended answers. The record shows that on March 5th the court denied a motion by defendant (supported by affidavits) to amend the answer. On March 10th the trial began, at which time defendant renewed his motion to file an amended answer substantially the same as that offered on March 5th, which was again denied by the court. Appellant insists that the refusal of the court to permit these amendments to be filed was reversible error.

Whether or not the county court abused its discretion in refusing defendant permission to file the amended answer depends largely upon the effect to be given to the proceedings before the county commissioners on February 26, 1903, wherein they fixed a maximum rate of $90 per cubic foot per second of time for the irrigation season of each year. This proceeding defendant sought to plead as a defense to the action. If it constituted a good defense, its exclusion amounted to a denial of a trial of the cause on its merits. It was not a technical defense. The proposed amended answers allege in part that on January 6, 1903, The Montezuma Water & Land Company (appellee here) presented its verified petition to the board of county commissioners of Montezuma County, asking the board to fix a reasonable maximum rate of compensation for water delivered to consumers by its ditch or canal; that on the filing of the petition, the board, by order, fixed February 24th as the date when it would hear all parties interested in the matter; that within ten days thereafter petitioner caused printed copies of such order to be securely posted in ten public places throughout the water district; that an affidavit of such posting was filed with the board; that on February 24th hearing on the petition was begun before the board; that such hearing was continued to the following day and again continued to the succeeding day; that upon the last day, February 26th, and after the board had heard and exam-

ined all the testimony and proofs concerning the original cost and then present value of the works and structures of petitioner's ditch, and the cost of maintaining and operating the same, it entered its order (duly recorded) fixing the maximum rate above mentioned; that no further proceedings were had by said board for fixing such maximum rate; and that defendant paid petitioner the rate so fixed by the board for all water furnished him for each year mentioned in the complaint. The entire proceedings of the board appear to have been in harmony with the requirements of secs. 3265-6-7-8, Revised Statutes 1908, which sections are the same as secs. 1, 2, 3, 4, found at pages 291-3, inclusive, of the session laws of 1887.

Section 8, article XVI, of the constitution, reads as follows:

"The general assembly shall provide by law that the board of county commissioners in their respective counties shall have power, when application is made to them by either party interested, to establish reasonable maximum rates to be charged for the use of water, whether furnished by individuals or corporations."

In conformity with this section the legislature enacted the four sections above cited, and therein provided a full procedure for establishing a reasonable maximum water rate by the board of commissioners. It is clear from the constitutional section quoted, that neither the legislature nor any court has power to fix a maximum rate to be charged for the delivery of water; and further, the board itself cannot of its own volition fix such rate. Its action can only be invoked upon petition of an interested party. Both by the constitution and statute the important duty of fixing a maximum rate is vested exclusively in the boards of county commissioners of the several counties. By said section 3265 the board is commanded each year at any regular or special session to

hear and consider *all* applications by interested parties, for fixing a reasonable maximum rate, and, if the affidavits presented by applicants show a reasonable cause therefor, proceed to fix such rate. By section 3268 the board is prohibited from changing any maximum rate so fixed by it within two years thereafter, unless upon good cause shown. It would seem to necessarily follow from the wording of this statute that at all times there exists in each water district a tribunal or public board, easy of access, which possesses ample power to fix a maximum rate for the delivery of water in such district. This power can be invoked by anyone interested, by filing a petition as provided by the statute. We think it immaterial in this case whether or not the board of county commissioners, acting under said statute, is deemed to be a judicial or a *quasi*-judicial body. It has the exclusive power to fix the maximum rate, and it would seem that said rate when so fixed is binding upon all persons within its jurisdiction, affected thereby, until set aside or annulled by a decree or judgment of some proper court. There seems to have been provided no appeal from its decision in fixing such maximum rate, and for that reason we think when such rate is once fixed by the board in accordance with the statute, the legislature intended it should be observed and obeyed by all persons or corporations affected by it until annulled by some proper court. It appears from the record that the board fixed a maximum rate under this statute in 1895, which rate we think should be considered as remaining in full force and effect at least until 1902, when, it is said, the district court held the rate fixed in 1895 void, but the only evidence of which is found in a decision of the supreme court reported in 39 Colo., at page 166, 89 Pac., 794, to which our attention is directed by the brief of appellee. Such decision was not pleaded and is not shown in the record.

It further appears from the amended answers that

after the district court had rendered its decree, appellee, on January 6, 1903, proceeding under the statute quoted, filed its petition with the board of commissioners, asking it to fix a reasonable maximum rate; that the board in conformity to the statute thereupon proceeded to, and did, on February 26, 1903, fix the reasonable maximum rate to be charged for water furnished in that district at $90 per cubic foot per second of time, for the season of each year thereafter during which water was required by law to be run; that the board was engaged three days, to-wit, February 24-5-6, in hearing the application and considering testimony and proofs offered by all parties interested, concerning the original cost, the then value of the works and structures of the ditch, cost and expense of maintaining and operating the same, and all other matters pertaining to the subject-matter under investigation. Assuming such allegations to be true, it would indicate that the board fully and fairly acted upon appellee's petition, and gave full consideration to all matters affecting the subject-matter of their investigation, and reached its conclusions and formulated its order solely upon the evidence and proofs adduced at such hearing, without reference to the district court decree, or any other matters occurring prior to the time of such hearing. The record being silent as to whether or not the same conditions existed at the time the commissioners fixed the rate in 1903 as obtained at the time when the district court rendered its decree in 1902, it must be presumed that the rate fixed by the commissioners was supported by ample evidence and proofs adduced at the hearing, which warranted the rate fixed at that time. It is true that the rate was identical with that fixed by the commissioners in 1895, and which the district court declared to be void, at the time it issued the injunction. Had appellee felt aggrieved at the rate fixed in 1903, it could have directly attacked the same in some proper

court, just as it did when it challenged the rate fixed in 1895; or had it believed that the commissioners in fixing such rate were actuated by a spirit of defiance of the court, rather than by an honest desire to perform their duties conscientiously under the statute, it could, by appropriate proceedings, have tested the good faith of the commissioners in the 1903 proceedings. Appellee did not adopt this course, but is now insisting on this appeal that the court should find, as a matter of fact, that in the proceedings of 1903 the commissioners were actuated solely by corrupt motives, and a spirit of defiance of the injunctive order of the district court; and this without a scintilla of evidence to support such finding. However sincere appellee may be in its belief that the commissioners disregarded their sworn duty in that proceeding and wilfully denied it a fair hearing on the merits, we find nothing in the record that warrants such assumption.

Upon the question as to what was a proper rate for that district, the lower court exhausted its power in declaring the rate of 1895 void. It cannot be said that it had power to fix a maximum rate or any other rate for delivery of water. The decree of the court, however, went further than to declare the rate void. It enjoined the board from in any manner enforcing or attempting to enforce the maximum rate fixed by it. There is nothing in the constitution or the statutes that we can find which charges the board of county commissioners with the duty of seeing that its order so fixing the maximum rate is obeyed and followed by carriers or those furnishing water in the district. Inferentially, at least, the legislature appears to have relieved the commissioners from such duty, for, in said secs. 3273-4, it imposed a stringent and severe penalty upon any person or corporation refusing to deliver water at the maximum rate so fixed, and declared such refusal to be a misdemeanor,

subjecting the offender to a maximum fine of $5,000 and a maximum term of imprisonment of one year, or both. Section 3274 goes further, and provides that if any corporation, in defiance or attempted evasion of the provisions of the act, shall refuse to deliver water to any consumer after tender of the compensation fixed, it shall be the duty of the attorney general to institute proceedings in *quo warranto* for the forfeiture of its corporate rights and franchise; and also compel its obedience by mandamus or other proceedings.

Even if it be assumed that the decree of the district court was in force, notwithstanding the appeal taken therefrom (not necessary to decide), how can it be said that the commissioners were violating the injunctive feature of the decree in proceeding, in 1903, under their statutory powers and duty to fix a maximum rate? As above shown, the commissioners in that proceeding were engaged in hearing evidence and proofs for the purpose of ascertaining therefrom what a reasonable maximum rate should be in that water district at that time. It is not pretended nor even intimated that they were attempting to compel the petitioner, The Montezuma Water & Land Company, or anyone else, to supply water to consumers in the district at a rate not in excess of that previously fixed by them in 1895, *viz.,* $90 per cubic foot. Hence, we are unable to see, upon anything in this record, how their action in that proceeding can be construed as a violation or defiance of the order of the district court or the injunctive feature thereof. In fixing the maximum rate the commissioners were acting within their statutory powers. The order made by them fixing the rate could not be assailed collaterally, and, not having been attacked by a direct proceeding in a competent court to set it aside, and there being no showing or claim that the order or proceeding is void for lack of jurisdiction, or clear excess of authority, the rate fixed became

the existing, lawful, maximum rate for delivering water to consumers.—*Northern Colo. Irr. Co. v. Pouppirt,* 22 Colo. App., 563, 127 Pac., 125, and authorities cited. Any attempt by the carriers or others delivering water to charge or collect a higher rate was unlawful and made them thereby liable to the punishments and penalties above mentioned. If defendant had been allowed to file his amended answer and could have proven the allegations of the same, he would have established *prima facie* a complete defense to plaintiff's cause of action, for plaintiff admitted payment in full, by defendant, for all water delivered to him during each year, of a sum equal to the maximum rate fixed. Therefore, we think the court erred in refusing to allow the same to be filed, and that defendant's rights were prejudiced by such ruling. The first motion to file an amended answer was not made until six days before the trial, but there is no showing by the record that the failure to apply at an earlier time for permission to file the same would have caused plaintiff any inconvenience or in any way prejudiced its rights, or would have deprived it of a full and fair hearing on the merits. Plaintiff, would have had five full days before the trial in which to ascertain the truth or falsity of the allegations therein contained.

As to the duty of a court where a motion is made to amend pleadings, it is well settled that the granting or denying of such motion is generally left to the sound discretion of the court. However, it seems to be the usual practice for courts to indulge in more liberality in permitting amendments to answers than to complaints. The brief extracts from authorities next hereinafter cited will be sufficient to show the general views of our own appellate courts on the subject, *viz.:*

In *Miller v. Thorpe,* 4 Colo. App., 559, 36 Pac., 891, it is said:

"The appellants are quite right in their claim that the power which the code gives to the court to permit amendments should be broadly and generously exercised to further the interests and protect the rights of litigants."

From *Sellar et al. v. Clelland et al.*, 2 Colo., 532, the following:

"The great object of a trial is to secure justice to the parties engaged in the suit. Substantial rights should never be sacrificed to mere forms, and amendments should at all times be liberally allowed when they do not lead to surprise and injury."

The court says, in *Cartwright et al. v. Ruffin*, 43 Colo., 377, 96 Pac., 261:

"From necessity, greater liberality exists in allowing amendments to answers than in amending complaints. Plaintiff may always, in the absence of a counter-claim, or cross-complaint, dismiss his action and begin anew; * * * But the defendant is not so fortunate. If by mistake he pleads an ineffective or insufficient defense, to say that he may not, by amendment, bring in a good defense, is to inflict a drastic penalty for his inadvertence or mistake; * * * Hence it is that, especially under code practice, the courts are more liberal in permitting the amendment of answers than in allowing the amendment of complaints."

*Lewis v. Jerome et al.*, 44 Colo., 459, 99 Pac., 562, 130 Am. St., 131, was an action wherein judgment in damages was obtained by the heirs of Jerome, plaintiffs, against Lewis, for having (as claimed) deeded certain land to Kitty M. Jerome without authority or right for so doing. After judgment for plaintiff, motion for new trial was filed by defendant, who at the same time asked leave to file an amended answer, alleging an additional defense. The motion was supported by affidavit, which

averred that the facts stated in the additional defense
were not known to defendant at the time of filing his
original answer, nor until the trial of the cause. The
motion to amend was denied, as well as that for a new
trial. The supreme court held that if the allegations of
the amended answer were true, it showed the additional
defense therein stated to be material to defendant's
rights. The supreme court in that case was apparently
convinced from the record that the refusal of the trial
court to permit the filing of the amended answer re-
sulted in a hardship to defendant, which should be reme-
died if warranted by the application of sound, equitable
principles. For failure of the trial court to permit the
amendment, the supreme court reversed the judgment.

Other similar rulings could be cited from our own
appellate courts, as well as those of other jurisdictions,
but no good purpose could be served by extending the
list.

The *desideratum* to be reached in all legal contro-
versies is to correctly determine the substantial rights
of the parties litigant, and *nisi prius* courts can invoke
no safer rule than to permit liberal amendments to plead-
ings, which tend to secure a full and fair trial upon the
merits, when the same can be done without imposing un-
due hardships upon, or prejudicing the rights of, the
party opposing such amendments. In the case at bar,
affidavits were filed in support of the motions to amend,
which showed that defendant was a non-resident of Mon-
tezuma county in 1903, when the commissioners fixed the
maximum rate, and had no knowledge of such proceed-
ings until a few days before the trial, and before the
motion to amend was interposed. We cannot see how
plaintiff could have been surprised or prejudiced by al-
lowing the amended answers to be filed, as appellee here
was the petitioner in the proceedings before the com-
missioners in 1903, and must necessarily have had full

knowledge of everything pertaining thereto. The only apparent reason given by plaintiff for opposing the motion to amend the answer was that it was not made in apt time. This was a strictly technical objection, and should not have prevailed over the substantial right of defendant to interpose the additional defense contained in said answers.

Whether or not the order of the board of commissioners was admissible in evidence without being pleaded need not be decided here, as it was offered and upon plaintiff's objection excluded. Our ruling that the plea should have been allowed carries with it the corollary that it is admissible when pleaded, unless defeated for reasons not appearing in the record now before us.

There are a number of other assignments of error relied upon by appellant, which have been ably discussed *pro* and *con* by counsel for both parties, which we deem unnecessary to notice, as the conclusions we have already reached are decisive of this appeal.

Entertaining the views above expressed, the judgment will be reversed and cause remanded.

*Reversed and Remanded.*

Decided October 14, A. D. 1913. Rehearing denied January 12, A. D. 1914.