[No. 3985.]

THE NEW LOVELAND & GREELEY IRRIGATION & LAND COMPANY v. THE CONSOLIDATED HOME SUPPLY DITCH & RESERVOIR COMPANY.

1. WATER RIGHTS—PRIORITIES—STORAGE.

The construction of an irrigation ditch and the appropriation of water thereby to the irrigation of lands during the irrigation season, and a decree of priority for that purpose, gives the appropriator no priority of right to water during the nonirrigating season for the purpose of storage for future use in a reservoir subsequently constructed.

2. SAME.

The fact that at the time of commencing the construction of an irrigation ditch it was the intention of the appropriator to also use it as a feeder to a reservoir to be constructed sometime in the future, in which to store the water during the nonirrigating season for future use, would give the appropriator no prior right to water for storage

during the nonirrigating season to date from the commencement of the ditch, unless the construction of the reservoir was so closely connected with the construction of the ditch as to show them to be one system, and the work thereon was prosecuted to completion and water thereby appropriated to a beneficial use with reasonable diligence.

3. SAME.

The priority to the use of water for storage during the nonirrigating season depends upon the time of appropriation for that purpose, and an appropriator who first constructed his reservoir and appropriated water for that purpose is entitled to priority over a subsequent appropriator notwithstanding the subsequent storage appropriator was a prior appropriator for irrigation and supplied his reservoir through a ditch with prior rights for irrigation purposes.

*Error to the District Court of Boulder County.*

Mr. JAMES W. McCREERY and Mr. HUGH BUTLER, for plaintiff in error.

Mr. H. N. HAYNES and Mr. BYRON L. CARR, for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The plaintiff in error, who was plaintiff below, is the owner of a reservoir used for storing water in the "nonirrigating" season for subsequent use in irrigating its lands. The defendant in error, defendant below, is the owner of two reservoirs, used for a similar purpose. The dispute between them is as to which has the prior right for filling these receptacles. Their feeders are irrigating ditches, which take water from the Big Thompson river in Larimer county, in water district No. 4 of this state, to which severalty a priority of right was awarded by the district court of Boulder county in the year 1883, under a decree in the statutory proceedings brought for that purpose. From the findings of fact made by the trial court in the pending cause, which are supported by the evidence, it appears that the work of construction of plain-

tiff's reservoir began in 1893, and was prosecuted with diligence to completion, and water therefrom used during the next ensuing season; and of defendant's reservoirs, on the one in October, 1882, and upon the other in 1889, and was diligently prosecuted and water therefrom beneficially used within a reasonable time for irrigation purposes.   Upon these findings a decree was rendered, adjudging the different priorities as of these dates.

Certain preliminary questions are discussed by plaintiff in error, not touching the real merits of the case, and growing out of its interpretation of the issues which were submitted to the court under an agreed statement of facts.   We decline to enter this field of inquiry further than to say that the points so urged are not tenable.   The legal questions decided are fairly embraced within and warranted by the pleadings, the agreed statement of facts and the evidence introduced by the respective parties without objection.

By the decree of 1883, the irrigating ditch belonging to plaintiff, which is now the feeder for its reservoir, was awarded a priority of right senior to that awarded to both of the ditches of defendant, which are now used as the feeders of its reservoirs.   It is the position of plaintiff that the appropriations of water made by it, and for which it has received its decreed priority, are appropriations made for agricultural purposes as of the decreed dates, regardless of the method or the time of use.   That is to say, plaintiff claims the right to employ its decreed appropriations in the most effective and economical manner, either by immediate use in the irrigation of lands, or by storage of water during the nonirrigating season and at other times when water is to be obtained from the river, to be used by it thereafter during the irrigating season.   And while it did not begin constructing its reservoir and the appurtenant appliances until December, 1893—more than ten years after the rendition of the decree fixing the priority of its ditch, and twenty-eight years after the date of the first priority thereby awarded—nevertheless, its priority of right for the storage of water in its

reservoir bears the same dates as the respective priorities awarded to its ditch.

Upon the other hand, it is the contention of defendant, that under the statutes of this state, as well as the general law relating to the subject of appropriation, the right of storing water in reservoirs is one thing, and the right of diverting water for immediate use in irrigating lands is another and distinct thing, and neither necessarily depends upon, or is connected with, the other. In other words, the date of the priority of right for storage purposes attaches at the time when the actual work of construction of the reservoir is begun, provided, of course, such work is prosecuted to completion with reasonable diligence, and beneficial use made of the water within a reasonable time; and is not necessarily fixed by the time of the beginning of work upon the feeder of the reservoir, unless indeed it can be said that the two are so closely connected in point of time, in original intention and actual construction as that they may fairly be considered as a part of the same general and continuous enterprise; and this depends upon the facts of each case.

Much discussion is indulged in by counsel over the terms "direct" and "indirect" irrigation, plaintiff maintaining that in the system of irrigation law there is no valid difference, while defendant dwells with some force upon a distinction supposed to exist between the two methods of use, and the law applicable thereto. We shall not concern ourselves with mere definitions, but determine this controversy upon more substantial grounds. If, as contended by plaintiff, this record showed that at the time it began work upon the ditch which is now the feeder of its reservoir, it was the intention to perfect a system of appropriating water which included the construction of a reservoir for storing water during the nonirrigating season, to be used for purposes of irrigation, and, if within a reasonable time the entire system had been built and used for such purposes, it might be that its present claim of right to store water in its reservoir with a priority as of the date of the beginning of work on its ditch

could be maintained, entirely independent of the decree of 1883. But it was not even the owner of a site for a reservoir when work was started on the ditch, and it did not enter upon the work of constructing its reservoir for more than ten years after work was begun on one, nor until four years after work was begun on the other of defendant's reservoirs. Mere intention of an appropriator to build a reservoir and make it a part of a general system of appropriating water, is of itself insufficient to constitute a vested right to store water therein. That intention must be manifested by a completion of the different parts of the general plan and a beneficial use within a reasonable time. This duty is incumbent upon an appropriator who bases his right upon such claim. It should, however, be said that the claim of plaintiff, and upon which it mainly, if not exclusively, relies, is that the decree fixing the priority of right of its ditch to the use of water for agricultural purposes, fairly interpreted, gives to it the priority of right to store water in reservoirs which thereafter it might build, as of the date belonging to the ditch. There are two sufficient replies to this contention: First, it was not within the jurisdiction of the court in the proceedings leading up to the decree to make an absolute and unconditional decree of priority for a reservoir not then begun or constructed; and in the second place, the decree itself does not purport to do so. In fact it expressly, and also by necessary implication, excludes from the operation of its provisions ditches and other appliances not then in existence, as well as diversions of water not then applied to a beneficial use. Not including instruments for diverting or storing water at the time remaining incomplete, it would be difficult to interpret or construe the decree as embracing within its provisions, reservoirs not even then begun, particularly when they are not named or in any way identified. The defendant having completed its reservoirs long before the time when plaintiff first began the work of construction of its reservoir, and having continually used them for a beneficial purpose, we think the district court was clearly right in award-

ing to it priorities ahead of that of plaintiff. The case of *The Colorado Milling & Elevator Company v. Larimer & Weld Irrigation Company*, 56 Pac. Rep. 185; 26 Colo. 47, is in principle authority for the conclusion which we have just announced. See also Kinney on Irrigation, §§ 230, 232; *Nevada Water Co. v. Powell*, 34 Cal. 109; Pomeroy on Riparian Rights § 79. In the opinion of Hawley, Justice, in *Union Mill & Mining Co. v. Danberg*, 81 Fed. Rep. 73, will be found a valuable discussion, in which the rule is recognized.

In view of the interpretation given by counsel for plaintiff to our decision in the case of *Cache La Poudre Irr. Co. v. Larimer & Weld Res. Co.*, 25 Colo. 144, we deem it proper to remove the misconception. In the statement of facts in that case it was said that the defendant company bought certain shares of stock theretofore belonging to the owners of water rights under another ditch, and stored the water thereby represented in its reservoir, and thence distributed it during the later irrigating season to its stockholders, who used it for irrigating lands belonging to them and lying under their ditch. Nothing in the decision of that case was predicated upon the statement that water was stored in a reservoir and thereafter used for irrigating lands. In fact, in the opinion itself it is stated that the only question of importance was whether a transfer of priority and change of place of use injuriously affected a later appropriator. There was no question as to the rights of rival reservoir appropriators, or as to whether the date of priority for storing water in a reservoir was or was not of the same date as the priority of its feeder. A careful examination of the record in the case referred to shows that the reservoir was merely a part of the conduit employed in carrying water for what is denominated immediate use in irrigating lands, and not, as in the case at bar, a receptacle for storing water diverted during the nonirrigating season, thereafter to be used during the irrigating season. In no sense can it be considered an authority for the novel position assumed by plaintiff in the case in hand, that whenever the owner of a ditch, to which a priority has been decreed, chooses to build a reservoir for storing so-called winter

waters, his right to a priority for the reservoir shall be as of the same date as that given to the ditch, merely because the latter is used as its feeder, and because the original intention was at some time to make the reservoir a part of the ditch system.  In the present case it is sufficient to say that plaintiff's rights for storing water in its reservoir were not involved in, or in any manner determined by, the original decree which established the priority of rights in this water district; that even if it was the intention of the owners of the irrigating ditch which is now used as the feeder of plaintiff's reservoir to construct a comprehensive system which included, as a part of the scheme, a reservoir for storing water during the nonirrigating season—the water to be thereafter used for irrigating its lands—that intention was not carried out, nor was the reservoir part of the system prosecuted to a completion within a reasonable time after the work of constructing the ditch began, so as to cut off the rights of defendant, which entered upon the stream, which is the common source of supply, and finding that no water had been diverted by plaintiff during the nonirrigating season, and when the water of the stream was not needed for immediate use, began and successfully prosecuted to completion its several reservoirs and beneficially used them years before the plaintiff, by any outward act, manifested its intention to construct, or, as a matter of fact, began its work of construction upon its reservoir.  While the statutes of this state contemplate that one may, by complying with their provisions, acquire and have decreed to him a priority of right for storing water in reservoirs, it is also clearly their design that this right shall not be dependent upon, or measured by, a right which he may have to a decree for his ditch of a priority for diverting water for immediate irrigation, though the ditch may, in addition to being used as a vehicle for carrying water for immediate use, be also utilized at some time as a feeder for the reservoir.  1 Mills' Ann. Stat. secs. 2270, 2403, 2408, 2453, 2456.  The judgment should be affirmed, and it is so ordered.

*Affirmed.*