[No. 3649.]

## Monte Vista Canal Co. et al. v. Centennial Irrigating Ditch Co.

1. WATER RIGHT—*Nature of the Right.* A water right is gained by appropriation, and is usufructuary in character. The appropriator has no property in the channel of the stream, nor in the water of the stream as it flows naturally therein. The water right is distinct from the ditch or other structure by which the water is conveyed. A water right is a freehold in land.

2. —— *Change of Point of Diversion.* The right of the appropriator to change the point of diversion existed before the statute, and in this state has always been recognized. It is a property right, qualified by the condition that the change shall not injuriously affect the vested rights of others. The public officers charged with the distribution of water are not permitted to recognize this right, or change the point of diversion in any case until permission is granted by the proper court.

3. Appeals—*When Is a Freehold Involved?* A freehold is never involved within the meaning of the statute conferring jurisdiction to review a judgment on appeal, unless such judgment necessarily deprives one of a freehold, or confers it upon another. The actual effect of the judgment in the particular case is the test.

Where an irrigating company petitioned for the right to change the point of diversion of the water to which it was entitled, admitting the freehold of certain other irrigating companies, protestants, and the decree granted accordingly, in no manner assumed to impair or diminish in quantity the property of any of those objecting, but declared that no right of the respondents would be injuriously affected, held that the freehold was not involved.

And a freehold was held not involved in an appeal by certain shareholders in the petitioning company where the only question was whether the conditions imposed by the decree were sufficient for their protection.

*Appeal from Costilla District Court.* Hon. Charles C. Holbrook, Judge.

Messrs. Corlett & Corlett, Messrs. Goudy & Twitchell, for appellants.

Mr. Jesse Stephenson, for appellee.

King, J., delivered the opinion of the court.

Motion has been made by appellants to remand this cause to the supreme court under the provisions of section 6 of the act creating the court of appeals, assigning as a reason, that the decision necessarily relates to and involves a freehold.

The judgment appealed from was rendered by the district court in and for Costilla county, in a special proceeding under the act of 1903 (S. L. '03, p. 278), on petition of The Centennial Irrigating Ditch Company, a corporation, owner of the Centennial Ditch, for permission to change the point

of diverting the water decreed to that ditch from the present headgate to a point about one and one-half miles further up the Rio Grande river. The petition alleged ownership of adjudicated water-rights, and that the change in point of diversion prayed for would not injuriously affect the rights of any person. The appellants (four canal companies, an irrigation district, and Malinda J. Workman for herself, as an heir, and as guardian of certain minor heirs) protested against the change, alleging that it would injuriously affect them, and each of them. The canal companies and the irrigation district were the owners of ditches or canals having decreed rights to the use of water from the stream junior to that of petitioner. The Workman heirs were the owners of certain shares of the capital stock of The Centennial Irrigating Ditch Company, and had been for many years receiving water through the Centennial ditch, and objected to the change, chiefly for the reason that the building of a new ditch and headgate, and securing the rights of way made necessary by the change, would occasion large expense, and that the cost of maintaining the same thereafter would be greater upon their shares of stock, and that if their water alone were left in the old ditch the cost to them of maintaining such ditch would be greater than if joined with the other stockholders.

Upon trial, and after full hearing, the court made its findings of fact that the change prayed for would not injuriously affect any person excepting the Workman heirs, and entered a decree granting the petition, except as to the water belonging to said heirs, which was ordered to be turned out as be-

fore, and the change as to them was granted upon the condition that no part of the expense of making the change and constructing the new ditch and head-gate should be assessed against the shares of stock in the Centennial Irrigating Ditch Company belonging to said heirs. From this judgment the several respondents prayed their appeal to the supreme court as provided in the irrigation statutes (sec. 2427, et seq., Mills' Ann. Stats.)

The contention of appellants is that the change granted will manifestly and necessarily result in the use of water by the petitioner for a greater length of time, or in its taking a greater quantity of water from the stream because of the larger acreage and different character of the soil intended to be irrigated, than before the change, and will also result in a much less return of water to the stream from seepage, which would require a larger quantity of natural flow than before to run down the stream to supply senior appropriations, thereby depriving appellants of a material portion of the water which they otherwise might draw from the stream; that the question is as to whether appellants, by the judgment appealed from, have been deprived of a water-right, or their right to the use of water materially lessened or diminished, and that therefore, a freehold is involved.

The testimony tended to show that under the old ditch, after a few days' irrigation, there resulted a heavy return to the stream, which supplied to a large degree the water required by senior appropriations; that under the new line of ditch a considerable acreage of land not theretofore irrigated was intended to be put into cultivation, and a

portion of the water would be carried over a divide so that the waste and seepage would not all readily or necessarily return to the stream.

The sole question for present determination is: Does the decision appealed from necessarily relate to or involve a freehold? Or, in general, is a freehold involved in a statutory proceeding for permission to change the point of diversion of a water-right, under pleadings and evidence as found in this case? The words "relate" and "involve" are synonymous as applied to the provisions of the act constituting the court of appeals and its jurisdiction to review causes transferred to it from the supreme court.—*Brandenburg v. Reithman*, 7 Colo., 323. *Wyatt et al. v. Larimer and Weld Irr. Co. et al.*, 18 Colo., 298. *McClellan v. Hurd*, 21 Colo., 197. *Knowles v. Lower Clear Creek Ditch Co.*, 27 Colo., 469. *Bates v. Hall*, 44 Colo., 462. In determining this question we have to consider the peculiar nature of the property designated "a water-right," and the title thereto, as distinguished from land. This "right" is said to be intangible and incorporeal. The ultimate title or ownership of the water of the natural streams of this state is, by the constitution, vested in the public, but dedicated to the use of the people, subject to appropriation. In *Wheeler v. Northern Colorado Irr. Co.*, 10 Colo., 582, it is said that even after appropriation, this title, except perhaps as to the limited quantity that may be flowing in the consumer's ditch, remains in the general public, while the paramount right to its use continues in the appropriator. The right is usufructuary. There is no property in the corpus of the water so long as flowing naturally. There

is no property in the channel of the stream, and the water-right is distinct from the right to the ditch, canal or other structure in which the water is conveyed. The original right and title is secured by appropriation. In this case, the evidence of title, or of the right to use the water, is the decree of the court adjudging the amount of water which the several canals or ditches may take from the stream, and fixing their relative priorities. By these decrees the right to divert the waters from a stream is fixed at and limited to a certain point or place designated as the headgate of the ditch to which the award is made. Under the decisions of our courts, the public officers charged with the control of the distribution of water, may not recognize the right to change this point of diversion, or deliver the water at any other point than that named in the decree, until permission is granted by the court.—*New Cache La Poudre Irr. Co. v. Water Supply & Storage Co.,* 29 Colo., 469. But the right to change the point of diversion existed before the statute and has always been recognized in this state. It is a property right.—*Union Colony et al. v. Elliott,* 5 Colo., 371. *Fort Morgan Land & Canal Co. v. South Platte Ditch Co.,* 18 Colo., 1. *Wadsworth Ditch Co. et al. v. Brown,* 39 Colo., 57. *New Cache La Poudre Irr. Co. v. Water Supply & Storage Co., supra. Lower Latham Ditch Co. et al. v. Bijou Irr. Co.,* 41 Colo., 212. *Vogel et al. v. Minnesota Canal Co. et al.,* 47 Colo., 534. But it is a *qualified* right, and has always been made subject to the condition or provision that it can be exercised only in case it appears that such change will not impair or injuriously affect the vested rights of others.—*Fuller et al.*

*v. Swan River Placer Co.*, 12 Colo., 12. *Lower Latham Ditch Co. v. Bijou Irr. Co., supra.* Session Laws 1903, sec. 2, p. 278.

That a water-right is a freehold is not in doubt. Weil in Water Rights in the Western States, says: "A water-right of appropriation is real estate, independent of the ditch for carrying the water, and independent of ownership or possession of any land, and independent of place of use or mode of enjoyment, whereby the appropriator is granted by the government the exclusive use of the water anywhere so long as he applies it to any beneficial purpose." —Sec. 288. A water-right has been held to be a freehold or "real estate" in the following cases: *Wyatt et al. v. Larimer and Weld Irr. Co. et al., supra. Insurance Co. v. Childs*, 25 Colo., 360. *Daum et al. v. Conley et al.*, 27 Colo., 56. *Knowles v. Lower Clear Creek Ditch Co., Id.*, 469. *Gutheil etc. Co. v. Town of Montclair*, 32 Colo., 420.

The courts of this state, as well as of the state of Illinois, from which our acts conferring jurisdiction were copied, have frequently been called upon to decide whether, in the particular case then before the court, a freehold was involved, and while declaring that no general rule, applicable to the varying conditions of all cases, has been or perhaps can be formulated, have in many instances said in substance that a freehold is not involved unless the right or title to the freehold is the direct subject of the action—and not incidental or collateral; and that a freehold is never involved, within the meaning of the statute conferring jurisdiction to review a cause on appeal, unless the judgment necessarily takes from one and (or) gives to another party to

the action a freehold title.—*Harvey v. Travelers'
Ins. Co.*, 18 Colo., 354. *McCandless v. Green*, 20
Colo., 519. *Callbreath v. Hug*, 48 Colo., 202. But it
has generally been found expedient to determine the
question solely with reference to the facts of the
particular case under consideration.—*Wyman v.
Felker*, 18 Colo., 382. *Knowles v. Lower Clear
Creek Ditch Co., supra. Murto, admr. v. King*, 28
Colo., 357. In the *Knowles* case it was said: "As
applied to the facts in this case it is the actual effect
(of the judgment) and not the result of a judgment
which might be rendered, which furnishes the test
of whether a freehold is involved or not. In other
words, if the effect of the judgment upon the party
seeking a review in this court has not been to de-
prive him of a freehold estate, then one is not in-
volved, within the sense of the statute regulating
appeals to this court."

Applying to this proceeding and judgment the
rules hereinbefore stated, it appears (a) That title
to the freehold is not the direct subject of the ac-
tion. Title to petitioner's freehold is admitted by
respondents. Title to respondents' freeholds is ad-
mitted by petitioner. All claim under the same gen-
eral decree and their rights and titles are *res judi-
cata* as among themselves, and attack thereon barred
by the statutes of limitation, except perhaps for
abandonment or fraud, which is not claimed in this
case. Petitioner has not asked that he be awarded
any part of respondents' freeholds, or any interest
therein; nor do respondents claim to be entitled to
any of the rights claimed by or decreed to the pe-
titioner. (b) The decree does not purport to take
from one party and (or) give to another party to

the action a freehold; or to impair, or diminish in quantity, the property of either. It expressly disclaims such purpose or effect, and is based upon the finding that the relief prayed for and granted will not injuriously affect any right of the respondents, except as to the interests of the Workman heirs which will be considered later. How, then, can it be said that a freehold is involved within the rules hereinbefore cited as applicable, even though the finding of the court be erroneous? The subject of the action is petitioner's freehold, not respondents,' nor one in which respondents claim any right, title or interest. The object of the action is to obtain judicial permission to use its own right at another place, which must be granted by the court unless the change results in injury to, or in other words, constitutes a trespass upon, respondents' rights. The question for determination was and is whether there was a trespass upon or injury to real estate, the right or title to which is not in dispute. Counsel for appellants claim that injury to a water-right cannot be compared with trespass to land, because damage by trespass leaves title to the land undisputed, while if the change of the point of diversion is made, and it necessarily works an injury, a portion of the freehold interest is taken— the *corpus* of the property is taken and not merely damaged. We perceive no material difference. The vital and controlling question, and the only one, decision of which is properly invoked or required by the issues presented (or, perhaps, that may be presented), is whether the change will injure the vested rights of respondents. Under the statute, if injury is not shown, the law gives the right to the change

and the court must declare it. If injury results it may be cured by the terms of the decree. But, if impossible to prevent or protect against injury, the decree is denied. Injury to real estate constitutes and is called "trespass;" and as applied to land, injury thereto is still trespass, and only that, even though the corpus thereof or a material part of it is actually taken or destroyed (as, by cutting timber, quarrying stone or removing soil.) The title remains undisputed. It seems to be generally held that a freehold is not involved in a suit for trespass to land.—*Trevett et al. v. Barnes et al.*, 110 N. Y., 500. *Hill v. Board of Water Commissioners*, 150 N. Y., 547. *Scully v. Sanders*, 77 N. Y., 598. *Brownmark v. Livingston*, 190 Ill., 412. *Greathouse v. Sapp*, 26 W. Va., 87. *Ponder v. Lard*, 102 Ky., 605. The question is *as to the injury*, and not *as to the title.*

The case of *Wyatt et al. v. Larimer and Weld Irr. Co., supra,* cited and relied upon by counsel in support of their contention that a freehold is involved, while pertinent, we think is not conclusive. In that case the plaintiffs and others were the owners of certain water-rights under contract with an irrigation company, owner of the ditch, by which the company agreed to sell and convey to plaintiffs, water-rights, each of which represented 1.44 second feet of water, and whenever the company had sold rights equal to the estimated capacity of the ditch to furnish water, shares of stock of the company were to be issued for such water-rights. It was alleged that the company had sold water-rights equal to the capacity of the company's canal to furnish water, and that it and others named as defend-

ants had conspired for the purpose of selling additional water-rights, largely in excess of said capacity to furnish water, and in violation of said contracts, and that unless restrained defendant would carry out such purpose. Injunctive relief was asked. Demurrer to the complaint was sustained by the district court and its decision affirmed by the court of appeals. The supreme court, after declaring that plaintiffs' water-rights constituted a freehold estate, to-wit, an easement in the ditch, and that the subject-matter of the action was that estate, held that the acts threatened by the defendants, if carried out, would materially diminish plaintiffs' estate, and that the object of the action being to enjoin or prevent such diminution, the necessary result of the decree would be that "one party will gain and the other lose a material portion of such estate," and that, therefore, a freehold was involved. From a careful reading of the case, however, it will be seen that under the pleadings a construction of the contracts by which the defendant company agreed to sell and convey water-rights to plaintiffs, was invoked, and a violation of the terms of said contracts alleged; that the extent of the right and title to those water-rights, under the contracts for deeds therefor, was in dispute, the determination of which would give to one party to the action and take from the other, right and title to a material portion of water-rights which they claimed as against each other. In that respect we think the case is clearly distinguishable from the case now under consideration. Upon rehearing in the Wyatt case, the court, after reiterating its original declaration that the water-right was an easement in de-

fendant's ditch, also said that it was an easement in the stream, and that a change in place of diversion, or of use, does not affect this right either in character or extent. And it is said in *New Cache La Poudre Irr. Co. et al. v. Water Supply and Storage Co.,* 49 Colo., 1, that permission to make change in place of diversion in no way enlarges the rights of petitioner, either as to the volume of water or the time of its use.

The Workman heirs sustain a different relation to the petitioner than do the other appellants, as they were stockholders in the petitioner ditch company. The quantity of water to which they were entitled was determined by the court and adjudged to remain where it always had been. No exceptions were taken to this part of the decree, nor appeal therefrom. The appeal as to the heirs was from the conditions imposed by the court which were said not to be sufficient to prevent injury. It seems that the only matter to be reviewed as to them, is as to whether petitioner shall, after change is made, continue to maintain the old ditch for the use of the heirs, or contribute thereto; or, the heirs be relieved from assessments upon their stock in the company for maintaining the new ditch.

We fail to perceive that a freehold is involved as to any of the appellants, within the meaning of section 6 of the court of appeals act, and the motion to remand will therefore be denied.