## No. 12,171.

BAKER ET AL. *v.* CITY OF PUEBLO ET AL.

(289 Pac. 603)

Decided March 31, 1930.   Rehearing denied June 23, 1930.

Mr. WALLACE SCHOOLFIELD, Mr. E. H. STINEMEYER, Mr. T. LEE WITCHER, Mr. THOMAS A. NEVENS, Mr. PAUL LORENZ, for plaintiffs in error.

490

Mr. W. O. Peterson, Messrs. Devine, Preston & Storer, Messrs. Adams & Gast, Mr. John H. Voorhees, for defendants in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

The city of Pueblo, and two of its municipal agencies, filed two separate petitions in the district court of Fremont county seeking thereby judicial decrees permitting a change of the points of diversion of certain waters of the Arkansas river which the city had acquired, and to which there had been decreed in the general adjudication proceeding in the water district to the carrying ditches of the grantors of the city priorities of right to the use of such water for irrigating their agricultural lands.

Before the designated hearing of these petitions about forty-five appropriators and users of water from the river and its tributaries in water districts 11, 12 and 13, and whose appropriations are junior in point of time to those of the petitioners, acting for themselves and other junior appropriators similarly situated, appeared and filed their written objections and protests to the requested changes, upon the ground that, if allowed, necessarily it would be injurious to their vested rights as such junior appropriators. Upon the issues thus joined, the court found for the petitioners in the main and entered permissive decrees which are attacked on this review.

All priority rights in question were originally for irrigating agricultural lands. If the decree stands, the city may use the water for domestic and other municipal purposes continuously, day and night, throughout the year. Our statute conferring upon district courts power to determine the relative rights of appropriators of the waters of our natural streams for irrigation purposes, requires that the decree awarding the same be made to

the ditches themselves and not to their respective owners. The five ditches in question whose priorities were originally awarded and used for irrigating lands may, for convenience in discussion, be put into two groups. Group 1 includes the Hannenkratt ditch, the Porter ditch, and the Lester and Atterbury ditch. Group 2 comprises the Orange White ditch and the Banks No. 1 ditch.

By repeated decisions of this court, and our former Court of Appeals, an appropriator of water from a natural stream in this state for the irrigation of agricultural lands, who seeks to change the point of diversion of the same, assumes, and must sustain, the burden of showing that the vested rights of other appropriators, particularly of junior appropriators, are not infringed. Some of our cases so deciding are *Bates v. Hall,* 44 Colo. 360, 371, 98 Pac. 3; *Vogel v. Minnesota Canal C. & R. Co.,* 47 Colo. 534, 107 Pac. 1108; *Fort Lyon Canal Co. v. Chew,* 33 Colo. 392, 81 Pac. 37. In the Vogel case, at page 541 of the opinion, Mr. Justice Bailey said: "This court has often said, in substance, that a junior appropriator of water to a beneficial use has a vested right, as against his senior, in a continuation of the conditions on the stream as they existed at the time he made his appropriation. If this means anything, it is that when the junior appropriator makes his appropriation he acquires a vested right in the conditions then prevailing upon the stream, and surrounding the general method of use of water therefrom. He has a right to assume that these are fixed conditions and will so remain, at least without substantial change, unless it appears that a proposed change will not work harm to his vested rights."

In *Farmers' Co. v. Wolf,* 23 Colo. App. 570, 131 Pac. 291, referring to this declaration of Judge Bailey, Judge King, the writer of the opinion, said at page 581: "* * * It is a matter of common knowledge that, except on streams in which the appropriations have not exceeded the constant supply, few instances arise in which the change of place of diversion of large quantities of

water, for a long distance, can be made without substantial injury to juniors, and the utmost care and scrutiny [should be exercised] to guard against such injury.''

See also *Trinchera Ranch Co. v. Irrigation District,* 83 Colo. 451, 462, 266 Pac. 204.

This declaration of Judge King is what, in other decisions, we have declared, and what practical irrigators regard as a true statement. This record discloses what is a matter of common knowledge in this state, that the Arkansas river waters are much over-appropriated. The decreed priorities call for a volume of water far beyond the average constant capacity of the river to supply. It is proposed to change the point of diversion of a large quantity of water, about seven cubic feet per second of time, from the original headgates to a point about forty-five miles down the river.

It was the duty of the trial court, as it is our duty, to exercise the utmost care and scrutiny to guard against injury to junior appropriators who, in this case, have filed protest against the proposed change. A careful examination of the record, assisted by the able briefs of counsel convince us that the trial court failed in this requirement, as we proceed now to demonstrate.

These five ditches are all in the same locality, near the town of Florence. Their headgates are practically equally distant from the ditches and reservoirs of the city of Pueblo, into which it proposes to divert the waters of its newly acquired priorities. The junior appropriators strenuously object to the changes. Some of the headgates of the ditches of these junior appropriators in the Arkansas river and its tributaries are below, and some above, the original headgates of the recently acquired ditches of the city. The lands that these five ditches supply with water are of the same character as to soil. They are close to the river and it seems to be agreed by the parties that the quantity of water necessary for the proper irrigation is substantially the same per acre under each ditch.

The trial court in its findings and decree permitted the change in points of diversion of the three ditches in group 1 for the full amount of their decreed priorities, and permitted a change as to the two ditches in group 2 of only one-fourth of the capacity of their decreed priorities. We have not been cited to any evidence in this record, and we are unable to discover any, that warrants the distinction made by the trial court as between the ditches of these two groups. Counsel for defendants, however, call our attention to the language of the respective decrees that contain the awards to the ditches of group 1, as contrasted to the decrees of the ditches in group 2, and they say that it was the result of the court's misapprehension as to the force and effect of the decrees that accounts for the unwarranted distinction in question as made by the trial court. In the adjudicating decree to each and all of group 1 ditches, after the designation of the lands, and the acreage for the irrigation of which the priority awards were made, and the quantity of water specified, are these words: "Continuous flow during the irrigating season." In the adjudicating decree to the two ditches in group 2, the language as to description of the land, acreage and quantity of water is the same as in group 1. but the continuous flow provision is entirely absent therefrom. Counsel for the city do not enlighten us as to what controlled the trial court in construing the meaning of the continuous flow clause as to the ditches in group 1, or why it was inserted in that group and omitted in the decree to the ditches in group 2. Neither have we found anything in this record that justifies the distinction made or that warrants the conclusion of the trial court. Yet that tribunal must have found, and so held, that this continuous flow provision in the decrees of group 1 ditches vested in the owners of the priority an absolute right to flow, at all times and continuously during the irrigating season, and regardless of the need of the lands which it was proposed to irrigate therewith, the entire decreed quantity of water as

against the rights of all junior appropriators including these protestants, and that the city in acquiring these priorities might so use the waters thereof in supplying its inhabitants with water as against the rights of all junior appropriators, including these protestants. This must have been the theory of the trial court, and it is the theory of the city, which asks us now to sanction the same by approving the decree which, if good at all, can be upheld only by sanctioning the construction of the effect of the language of the decree erroneously adopted below. In effect this permissive decree, if upheld, authorizes the city to change the points of diversion of group 1 ditches to points 26 miles down the river and there divert the entire decreed priorities into its reservoirs and water mains to their full capacity during the irrigating season and continuously, day and night. Such a conclusion of the trial court could be reached, if at all, not from the evidence concerning the injury to junior appropriators, but only by a construction of the quoted language of the original adjudicating decree as to a continuous flow.

That the findings and conclusions were so arrived at appears beyond question from the following circumstances. There is no evidence in this record that we have discovered, and counsel for the city have not assumed to point it out, which justifies the trial court's conclusion that the continuous flow provision permitted the irrigator to flow continuously, during the irrigation season, the full quantity of water awarded regardless of the necessity for using the same.

Read into every decree, regardless of its language, is the unquestioned law of this state that an owner of a water priority may use the quantity awarded only when good irrigation usage justifies it, and when the needs of the land are satisfied, the water must no longer be used by him, but must be permitted to flow uninterruptedly in the natural channel of the stream. *New Mercer Ditch Company v. Armstrong,* 21 Colo. 357, 40 Pac.

989. A right to use of water for irrigation is limited in time and volume by the needs of the land and the law reads this limitation into a decree declaring the right. *White v. Nuckolls,* 49 Colo. 170, 177, 112 Pac. 329. The trial court should have read this language into its decree, but it did not do so, so that, "continuous flow during the irrigation season," means only when the same is necessary for proper irrigation of the land proposed to be irrigated therewith. We think we are not mistaken in the assertion that the trial court's decision that no injury would result to the defendants as junior appropriators is based entirely upon the continuous flow provision of the adjudicating decree to the three ditches in group 1. The conclusion, at which we have arrived, is strengthened by another circumstance. The evidence produced by the defendants to show injury, as well as that produced by the city to disprove it, that will result from the proposed change in point of diversion as claimed by the defendants was the same as to all five of these ditches. The point of diversion of the Orange White ditch, one of the two in group 2, had by previous decree of court been changed in 1906 to the headgate of the Hannenkratt ditch in group 1, and thereafter and at the time these proceedings were begun, the water therein was carried to lands in the Hannenkratt ditch and was being so used at the time of the decree in this case. Notwithstanding this change in point of diversion, the trial court in allowing the transfer sought, as to the Orange White ditch, cut down the quantity allowed to pass down the river 75 per cent, and allowed only one-fourth of the adjudicated quantity to pass down to the headgates of the city, and at the same time allowed the transfer as to the Hannenkratt ditch proper of the full quantity of its original decree. This means, if it means anything, that the proposed change in point of diversion of 2.16 cubic feet of water originally decreed to the Hannenkratt ditch, from the original point of diversion and from the original headgate, to the ditches and reservoirs of the city, would not

injure junior appropriators on the same stream, while injury would result from a like change of the Orange White ditch of one cubic foot of water from the same ditch to the same headgate and to the same ditches and reservoirs of the city.

In fine, the record sufficiently discloses that the trial court construed the continuous flow provision of the original decree to these three ditches as giving to those in group 1 and the owners thereof the absolute right to flow the decreed quantity continuously throughout the irrigation season, day and night. The record also shows that the trial court's conclusion and inference therefrom that changes of point of diversion thereof into the ditches and reservoirs of Pueblo could not and would not result in any enlarged use either in volume or time because, in its view, a continuous flow, day and night, by the city hereafter could not and would not exceed the continuous flow of the same volume that the farmers enjoyed at the original points of diversion.

We cannot sustain such reasoning or such conclusion. The evidence produced by the city itself does not justify the trial court in its findings or its decree thereon. It is more than apparent that the court's findings and decree would not have been made had it not been controlled by its erroneous conclusion as to the force and effect of the continuous flow clause of the adjudicating decree to the three ditches in group 1. Just how or why the particular water decreed to the Orange White ditch, if not diverted at the original headgate, but left to flow uninterruptedly down the river, a distance of 26 miles to the new headgates of the city would arrive there diminished in quantity by three-fourths of its volume while an equal volume of water of the Hannenkratt ditch flowing at the same time and in the same channel would reach the lower headgates of the city undiminished in quantity has not been explained. Certainly we may not assume, and the trial court below should not have assumed, without convincing evidence, that the waters of the Hannenkratt

ditch proper are endowed with some unusual celerity or rapidity of flow that is lacking in the flow of the waters decreed to the Orange White ditch. It is unreasonable to say that of the waters adjudicated to these two ditches that what is decreed to one ditch would, and the waters decreed to another would not, work injury to subsequent appropriators when diverted and carried in the same stream at the same time to a new headgate below.

It would serve no useful purpose merely to set aside this decree and remand the cause for another hearing below, and this is so because the theory upon which the city has predicated its right to a decree changing the points of diversion of its newly acquired ditches is radically wrong, and no amendment could properly be made to the petitions without in substance changing the grounds of its complaint or cause of action. The decree therefore should be set aside and the cause remanded with instructions to the trial court to vacate the same and dismiss the petitions at the cost of the petitioners.

Decree reversed.

MR. JUSTICE ALTER not participating.