No. 16,617.

STATE HIGHWAY DEPARTMENT *v.* DAWSON ET AL.

(253 P. [2d] 593)

Decided November 17, 1952.   Rehearing denied January 5, 1953.

Mr. JOHN W. METZGER, Attorney General, Mr. ALLEN MOORE, Deputy, Mr. SIDNEY A. JOHNSON, Assistant, Mr.

Vincent Cristiano, Assistant, Mr. Duke W. Dunbar, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Edward L. Higbee, Assistant, for plaintiff in error.

Messrs. Darrow, Mincer & Petre, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Defendants in error, as plaintiffs, filed this action on March 26, 1949, against defendant to recover for the agreed price for gravel taken from the lands of plaintiffs under an "option to buy material" dated August 8, 1947. The gravel in question was taken and used by defendant on the Blue Mountain cut off highway project in Rio Blanco county; it undisputably appears from the record that this particular highway project was set up prior to July 1, 1947; an allotment of appropriated funds therefor was approved prior to that date; and said funds for this project were "ear marked" for this particular project. Defendant moved to dismiss on the general ground that the action was not maintainable because it is against a department of the sovereign state, and is, therefore, immune. This motion was overruled and answer filed. After various motions concerning the different causes of action and defenses were filed, a pretrial conference was had and certain admissions were made and stipulations entered which virtually removed all factual questions from dispute. Counsel for defendant announced that they elected to stand upon their motion as made and would not contest the factual issues to be presented at the trial. The ex parte trial or hearing was had, resulting in a finding by the court that defendant had removed 49,867.1 tons of gravel at the agreed price to be paid of twelve cents per ton; further that the price of twelve cents per ton was a fair and reasonable price; that defendant is indebted to plaintiffs in

the sum of $5,984.05, together with interest at six per cent per annum from the first day of September, 1947, in the sum of $1,112.00, together with costs expended; and judgment was entered on the findings.

Error is specified in four specifications of points which are, in substance, that the lower court erred in overruling the motions to dismiss on the ground that defendant is immune from said suit because the suit is an action against the state in its sovereign capacity; that so far as recovery was to be based upon a contract, the complaint fails to show compliance with chapter 3, '35 C.S.A., known as the Administrative Code of the State of Colorado; that the contract was not executed in accordance with said administrative code; and finally, that the court erred in granting judgment in favor of plaintiffs for interest and costs.

As we said in the case of *Boxberger v. State Highway Department*, 126 Colo. 438, 250 P. (2d) 1007, in the opinion this day announced, "This is not an action in tort, nor is it one to impose liability upon the state, nor for the recovery of money that would finally come from the funds of the state treasury, neither would any political or governmental power of the executive branch of the state government be invaded through the relief sought." The general principle thus announced definitely applies to the case at bar, because no additional burdens would be cast upon the funds of the state highway department. In support of this reasoning we find that here defendant highway department anticipated its needs, knew the extent of its liability and set aside and "ear marked" money for the cost of gravel on this particular project, and the cost thereof was a part of the expenses for which these funds had already been allowed and allocated. These facts make this case and *Boxberger v. State Highway Department, supra,* wholly and clearly distinguishable from the case of *Mitchell v. Board of County Commissioners,* 112 Colo. 582, 152 P. (2d) 601, relied upon by defendant highway department herein. The Mitchell case, supra, was an action

brought by a landowner against the highway department claiming damages to his land in the construction of a highway and bridge and if he recover for a tortious action, then a judgment would have to be satisfied from the funds of the department and therefore be an additional burden. Here no further liability would accrue other than that anticipated and for which provision is made.

■ Section 105 (5) chapter 143, volume 4, '35 C.S.A., provided that the state engineer shall have the power to "acquire by *purchase* or *condemnation* stone or gravel beds and any other material suitable for highway construction." (Italics supplied.) No doubt could exist that defendant highway department, in the instant case, could have condemned the gravel here taken in the event payment therefor could not have been agreed upon. Proper business-like action under the statute in making contracts for purchase, to avoid condemnation proceedings, should be looked upon with favor and is to be encouraged. When defendant highway department attempts to operate under the particular statutory power above set forth, the rights and responsibilities that follow are the same as those of individuals in ordinary business transactions with but few exceptions. Here the department was permitted, under a verbal agreement, to go onto plaintiffs' lands and remove gravel at a specified price per ton; it entered upon the lands, removed the amount of gravel hereinbefore indicated, and refused payment on the assertion or pretense that plaintiffs did not have title to the lands. It appears that plaintiffs had the placer location on these lands and were in possession thereof and had title as against everyone except the United States. Ordinary business honesty insists that a state, or any of its departments or agents, cannot be allowed to receive the benefits from an agreement and then repudiate the transaction without restoration of the property taken, or its agreed price, or the reasonable value thereof.

■ If the arguments presented by defendant herein were to prevail, then no one in the position of plaintiffs herein, as owners of material, would feel secure in making any contract for the purchase of their material such as is provided for by the statute above mentioned and would be relegated to the position of insisting that condemnation proceedings be instituted instead. Here, defendant highway department elected to acquire the gravel involved by purchase and in doing so, it cannot hide behind the cloak of state immunity to avoid payment therefor. Defendant does not deny that it needed this material; had anticipated its use; and had allocated and "ear marked" funds with which it was to be acquired. The enforceability of agreements such as here made to supply materials for public work are controlled by the same factors that control the validity of contracts between private persons for other purposes.

■ The contention is made that there was no compliance with the administrative code in this transaction. The specific powers vested in the state highway engineer by the 1947 statute is in conflict with the powers granted to the comptroller under the administrative code. A study of the two enactments clearly discloses that it was not the intention of the legislature to include the state highway department within the provisions of the administrative code as to such matters as are herein involved.

■ The verbal agreement first acted upon merged into a written agreement designated as "option to buy material" and it was admittedly executed by the duly authorized agents of the department. It was on a form furnished by the department and is, in fact, exactly what its title indicates, namely, an "option," because the department assumes no affirmative obligation thereunder except to pay if it exercised its option by taking any of the material. As to any of the affirmative allegations of defense set up in defendant's answer, they are of no avail here because defendant waived its opportunity to present any evidence in support thereof. One of these as-

serted defenses was the illegality of the contract because it was not signed by the comptroller. Unless such affirmative allegations are proven by competent evidence, it cannot be urged in this review.

As to the points specified that the court erred in granting judgment in favor of plaintiffs for interest and costs, we are compelled to say that the customary rule is to be followed, which is, that the state may bind itself for the payment of interest by legislative action, or become bound by virtue of an obligation imposed by its contract; and further, it is the general rule that interest and costs are taxed against the losing party. Where money is concededly held, and available, by defendant highway department for the payment of this material, its failure to pay, after being obligated to do so, subjects defendant highway department to the same rules of business integrity as any other commercial transaction.

We are in complete agreement with the summarization made in this case by the learned trial judge, a part of which is as follows:

"We are in complete agreement with the pronouncements of the Supreme Court in the Mitchell case, and with its decisions on the facts. Were this almost any other kind of action than it is, we would find no difficulty in holding that the Mitchell case is finally determinative of the issue, adversely to plaintiffs. The Highway Department *is* but an agency of the state government, notwithstanding its corporate entity. Its duty and purpose is to construct and maintain highways. A suit for damages allegedly sustained because of faulty design or construction of a highway should not be, and is not maintainable against it without state consent.

"Clearly, this is not such an action. The Department is authorized by law to enter into contracts for highway construction, and for the procurement of materials to be used for such purpose. However, such construction contracts may not be entered into until (1) the project is set up, and, (2) an allotment of appropriated funds ap-

proved. Upon such approval, said funds are set aside ("ear-marked") for that particular project, and therefrom the costs of construction thereof, according to plan and design, are paid. No further appropriation by legislative action is called for. In fact, the legislature has nothing to do with allocation of state funds to particular highway projects. The money has been appropriated; it has been allocated; it has been set aside, "ear-marked," and placed in the "kitty" for each project before contracts are let. So far as we are advised, and we believe it to be true, such was done in the instance from which grew this action. It is a misconception of fact and of law, and is idle to say, that should judgment result here favorable to plaintiffs, it can be paid only upon legislative appropriation. The legislature has already done its part. The money was available when, as plaintiffs allege, defendant contracted with them for certain road building material, and it is presumably now available that said materials may be paid for. Judgment herein favorable to plaintiffs would add no liability to defendant, nor to the state, not already fixed by contract, and covered by funds already allocated. This is not an action for damages, as was the Mitchell case, by which it is sought to saddle upon the state additional financial burdens. The sole question for determination in this suit is whether or not plaintiffs are entitled to be paid under the alleged contract. If they show that they are, the money is there to pay them. If they fail on the merits, then they are to go unpaid, not because of no liability under the action but because of no liability under the contract."

The judgment is affirmed.

MR. CHIEF JUSTICE JACKSON dissents.

MR. JUSTICE CLARK not participating.