## No. 27047

**In the Matter of the Application for Water Rights of the City of Grand Junction, Colorado, a municipal corporation, In the Gunnison River or its Tributaries: Tributary Involved: Kannah Creek, in Mesa County. City of Grand Junction, Colorado, a municipal corporation v. Kannah Creek Water Users Association; Lloyd V. Wright; Jenny M. Wright; The Kannah Creek Extension Ditch Association; and Ralph Kelling, Jr.; Robert S. Coburn; Howard Brouse; Lawrence Mash; William Blair; W. D. Bradbury; Clifford Davis; John L. Whiting; and Donald P. Whiting**

(557 P.2d 1173)

Decided December 20, 1976.

Graham and Dufford, D. J. Dufford, for applicant-appellant.

Williams, Turner & Holmes, Anthony W. Williams, for protestor-appellee Kannah Creek Water Users Association.

*En Banc.*

MR. JUSTICE DAY* delivered the opinion of the Court.

This case and Supreme Court Case No. 27046 (*City of Grand Junction, Colorado v. Kannah Creek Water Users Association*), announced this date, are related though involving separate issues. They were consolidated for oral argument.

This appeal seeks a determination of the right of the City of Grand Junction (the City) to store 7.81 cubic feet of water per second (c.f.s.) taken from Kannah Creek and obtained almost 50 years ago pursuant to an eminent domain proceeding.

---

* Retired Supreme Court Justice sitting under assignment of the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

The water referee ruled that the judgment in the condemnation action carried with it by implication the right to store water as an integral part of the City's authority to construct water works. The water judge thereafter rejected the ruling of the referee and entered judgment denying the City the requested storage right. We reverse.

The historical background of the present proceedings originated in 1907, when the City filed a petition in condemnation in Mesa County district court joining as respondents the owners of all of the direct flow appropriations on the main course of Kannah Creek. "Final Rule or Judgment" was entered approximately four years later when the City had made compensation payments of $182,940 awarded by a jury to respondents therein. The judgment decreed the City to be the owner of "a first, superior and paramount right to a continuous flow of [7.81 c.f.s. of water] over and above all other water rights claimed or asserted in reference to the water of said Kannah Creek or the water arising in the water shed of said stream."

The right to divert said water at a specified point of diversion was ". . . for the use of said City of Grand Junction . . . and its inhabitants, under the laws of this state regulating, governing and controlling the use and distribution of water by towns and cities, and the said city now has and at all times hereafter shall have and exercise control and dominion over said [7.81 c.f.s. of water]. . . ."

## I.

Because subsequent litigation has involved a great number of procedural errors, an understanding of the nature of the 1907 action and of the judgment rendered in 1911 is critical. The original action was not brought pursuant to the statutes dealing with the appropriation of water. Rather, it was strictly limited to the City's power of condemnation based on eminent domain.

The trial court was not required to and did not determine therein the respective priorities of appropriators of the waters of Kannah Creek. The proceedings were *in rem*; the court's ruling affected the right to the water itself.

Since the purpose of the City in securing the water was for the benefit of its inhabitants, *i.e.*, a public use, it acquired not only the ownership, but also the additional right to distribute that water to the citizens of Grand Junction which entails the construction of city waterworks. *Pennsylvania Railroad Co. v. Sagamore Coal Co.*, 281 Pa. 233, 126 A. 386 (1924), *cert. denied*, 267 U.S. 592, 45 S.Ct. 228, 69 L.Ed. 803.

The City's ownership is solely by virtue of the 1911 judgment. All appropriators on Kannah Creek were compensated upon the payment of damages by the City to them through the registry of the court. *Monte Vista Canal Co. v. Centennial Irrigating Ditch Co.*, 22 Colo. App. 364, 123 P. 831 (1912). The water belonging to Grand Junction is limited only

by the applicable eminent domain statute. *San Luis Land, Canal and Improvement Co. v. Kenilworth Canal Co.*, 3 Colo. App. 244, 32 P. 860 (1893). The controlling 1908 statute in Colorado reads as follows:

"[Incorporated cites] shall have the right and privilege of taking water in sufficient quantity, for the purpose [of supplying the same with water; to provide proper pumps and conducting pipes or ditches; to regulate the distribution of water for irrigating and other purposes], from any stream . . . in the state; *Provided*, That if the taking of such water in such quantity shall materially interfere with or impair the vested right of any person or persons or corporation, heretofore acquired, . . . they shall first obtain the consent of such person or persons or corporation, or acquire the right of domain, by condemnation, . . . and make full compensation or satisfaction for all the damages thereby occasioned to such person or persons or corporation." Revised Statutes of Colorado, 1908, Chap. 147, Sec. 6525, subdiv. 73.

The City's purpose in the condemnation proceeding was openly declared to be as follows:

". . . said water so to be taken and diverted [shall] be conducted by a system of water works to be erected by [the City] . . . for [its] municipal purposes . . . and for distribution among its inhabitants for domestic and other like beneficial uses."

■ The water referee in the instant controversy correctly interpreted the 1911 judgment. The referee held in effect that the court had by its order enabled the City to provide the water to its inhabitants by means of a system of water works to be "erected in the future" or the equivalent already in existence if available to the City.

We thus hold that the trial court unreasonably restricted the City by its narrow interpretation in ruling that the system of water works referred only to a distribution system and did not include facilities for storage. The 1911 judgment must be read as a whole. The lack of direct reference to storage rights and measurements is not fatal. On the contrary, the designation of a "paramount right" in cubic feet per second is a declaration of the City's right rather than as a limitation upon it and is a definite expression of an unlimited right.

## II.

On November 19, 1954, the City acquired the entire right, title and interest in and to a facility known as the Hallenbeck Reservoir, which is now known as the Purdy Mesa Reservoir. Shortly after acquiring this facility, the City constructed a by-pass line from the flow line to the Purdy Mesa Reservoir. By use of the by-pass line, the City is able to divert water from the flow line to the reservoir during the periods when not all of the water condemned in 1911 is required for municipal purposes.

Although the City has utilized the Purdy Mesa Reservoir for this purpose since acquiring title thereto, it instituted the present action in 1973

"to change the manner of use of [that] Water Right." Included in this application was a request that the City be authorized to store any part of the 7.81 c.f.s. of water in any storage facility which it owns and controls or in which it has rights to store water.

■ The trial court held that the City may not continue to store in Purdy Mesa Reservoir water which is not immediately required. This holding is based upon an erroneous concept of the effect of the 1911 judgment and was based on the court's misconception that appropriators on the Creek would be injured thereby. The court erroneously described that judgment as a "decree." Then proceeding upon that mistaken premise, it distinguished between direct flow and storage decrees and corresponding municipal distribution and storage systems, and then erroneously applied those rules of water law to the City's ownership of its water right.

As discussed above, the order in the 1911 eminent domain action was not a "water decree." It was a judgment in condemnation. And title to the use of the first 7.81 c.f.s. of water of Kannah Creek is in the City without regard to injury to water users on the Creek because each appropriator has been fully compensated in specific dollar damage for any injury resulting from the City's acquisition of that water. We hold the City may utilize its water in a manner consistent with beneficial use for the inhabitants of Grand Junction.

The City, in order fully to utilize its paramount right, must be able to store and hold that water. When the flow line water is placed in storage facilities, it is thereafter capable of being put to a beneficial use as required by the eminent domain statute quoted above. Furthermore, condemned water stored in any of the City's facilities may properly be transferred to any other facility the City owns and controls or in which it has storage rights. Such a water system was contemplated by the 1911 judgment. The City also acquired interests in several reservoirs in the condemnation proceeding. The necessity of holding water in reservoirs was obvious then as now. And the appropriators had notice of the City's almost immediate storage of water and were fully compensated.

■ It is true that by the compulsory sale the City could take from the appropriators only those rights which the appropriators themselves had acquired. *Westminster v. Church*, 167 Colo. 1, 445 P.2d 52 (1968). Thus, had the City condemned direct flow rights of some but not all appropriators on Kannah Creek, the appropriators not having been compensated would have standing to object to the City's storing of the water. However, the City acquired rights from and paid damages to every party to the action for the *loss sustained*; that is, the damages reached the injuries sustained by the City's use of water and the parties' loss of use thereof.

■ Although in condemning the water, the City may not do simply as it pleases, it is unquestionably entitled to do what is reasonably

necessary to carry out the public purpose for which the water was taken.

■ In the City's exercise of its power of eminent domain, all parties had notice that the water was taken for domestic purposes. And we reiterate that all parties were fully compensated for resultant injuries caused by the City's subsequent use of the water. The fact that the City did not utilize a particular reservoir until 1954 is of no moment to this Court. The damages paid were for use by the City of the water pursuant to the eminent domain statute. The water was set aside for beneficial public use, encompassing the public welfare, including health, convenience, and comfort of the inhabitants of Grand Junction.

## III.

■ The trial court gave inordinate weight to the holding by the district court of Mesa County in Case No. 16632. That case involved the City of Grand Junction and various others not parties to this action. In that 1970 ruling, the court held, *inter alia*, that the 1911 judgment did not give the City the right to store any of the 7.81 c.f.s. of water. That decision was never finally appealed to an appellate court. The appeal filed by the City was voluntarily dismissed pursuant to an agreement between the parties. However, that decision was and is void and is not binding upon this court.

The 1911 judgment was final [*Denver Power and Irrigation Co. v. Denver and Rio Grande Railway Co.*, 30 Colo. 204, 69 P. 568 (1902)], and the rights of all parties became definitively fixed thereby. Consequently, it is binding on said parties and their privies and successors in title or interest. Therefore, the court in Case No. 16632 lacked any jurisdiction to review or make a redetermination of or to set aside the City's right to store the 7.81 c.f.s. of water. That right was irrevocably awarded to the City in the condemnation proceedings, as discussed above. The parties to the subsequent action could not by express or implied consent confer jurisdiction upon the court in the 1970 action. *Triebelhorn v. Turzanski*, 149 Colo. 558, 370 P.2d 757 (1962). The matter was not later susceptible to review or interpretation by any court. The judgment in Case No. 16632, being void, is subject to attack directly or collaterally at any time and in any court. *In re Estate of Lee v. Graber*, 170 Colo. 419, 462 P.2d 492 (1969).

## IV.

■ Finally, the trial court took into consideration and gave great weight to the provisions of an agreement then in existence which involved an option to purchase water rights. The agreement was between the estate of Mr. Hallenbeck and the City. By its terms, insofar as relevant to this action, the City agreed to dismiss the appeal in Case No. 16632 wherein the City was denied the storage rights also at issue here.

Protestors herein contend that by making such an agreement, the City is precluded from here asserting any right to store the 7.81 c.f.s. of

water. Not so. That agreement did not affect the rights of the parties thereto, since there was a failure of the consideration. Grand Junction contracted to waive its right to appeal the void judgment discussed above. The estate did not thereby receive anything of value, since the City retained all right to store the subject water and since the void judgment could later be attacked either directly or collaterally. Also, the agreement does not affect this action for another reason, *i.e.*, the terms of that contract benefited only the parties thereto, and the rights obtained by the estate do not run with the stream. Protestors are at most incidental third-party beneficiaries to the agreement, not having been specifically named or provided for therein. No part of the agreement has been incorporated into a water decree. The protestors have no standing to ask this court to enforce the City's obligation to the Hallenbeck contract, if any in fact exists.

Judgment is reversed and the cause is remanded to the trial court to enter its order granting the requested storage rights.

MR. CHIEF JUSTICE PRINGLE, together with MR. JUSTICE HODGES, MR. JUSTICE KELLEY, join with retired MR. JUSTICE DAY in this opinion.

MR. JUSTICE ERICKSON and MR. JUSTICE LEE dissent.

MR. JUSTICE GROVES and MR. JUSTICE CARRGIAN do not participate.

MR. JUSICE ERICKSON dissenting:

I respectfully dissent. The water rights in issue were acquired in an eminent domain proceeding in 1911. In that proceeding, the condemnor sought to acquire 300 statutory inches of water, which is equivalent to 7.81 cubic feet of water per second of time. A municipality or governmental entity, subject to statutory limitations, can invoke the right of eminent domain to acquire water rights, but an eminent domain proceeding cannot be utilized to adjudicate water rights or change the use of existing water rights.

The City of Grand Junction, as condemnor, named the holders of direct flow water rights as condemnees. The water judge concluded that the only rights condemned in 1911 were direct flow rights and denied the City of Grand Junction the right to store the direct flow water that it was able to capture. In my judgment, his decision is correct. Neither adverse possession nor prescription is an issue.

In *Handy Ditch Co. v. Greeley & Loveland Irrigation Co.*, 86 Colo. 197, 280 P. 481 (1929), this court delineated the differences between direct flow rights and storage rights. Water which is diverted for direct flow is put to immediate beneficial use. Water which is stored is

subsequently put to beneficial use.

The water rights which were condemned were specifically set forth in the condemnation petition and in the subsequent judgment. The rights were direct flow rights and not storage rights. To characterize the condemnation proceeding as one in which "the City acquired rights from and paid damages to every appropriator *for the loss sustained"* (emphasis in majority opinion) is thus to beg the question. *See Baker v. City of Pueblo,* 87 Colo. 489, 289 P. 603 (1930).

The condemnor stands in no better position than the prior direct flow owners who were the condemnees in 1911. *Farmers Co. v. Golden,* 129 Colo. 575, 272 P.2d 629 (1954). *See State Highway Department v. Dawson,* 126 Colo. 490, 253 P.2d 593 (1953). That the 1911 condemnation judgment recognized this principle is reflected in the designation that the city acquired rights to a "continuous flow" of 7.81 c.f.s. Thus, the majority conclusion that "[i]n the City's exercise of its power of eminent domain, all parties had notice that the water was taken unconditionally," is not supported by the record or as a proposition of law.

Storage rights are defined in static storage terms, such as "acre feet" or "cubic feet." In contrast, "direct flow rights" are defined in terms that are appropriate to diversion from a flowing stream and are represented by such terms as "cubic feet per second" or by the equivalent definition — "statutory inches."

The 1911 judgment specified that the property condemned by the City of Grand Junction was 300 inches, or the equivalent of 7.81 cubic feet per second of water. The 1911 judgment does not mention the term "store" or any derivative or synonym thereof. Moreover, the difference between the right to store water and the right to divert the direct flow of a stream to put the water to immediate beneficial use was recognized long before 1911. *See New Loveland & Greeley Irrigation & Land Co. v. Consolidated Home Supply Ditch Co.,* 27 Colo. 525, 62 P. 366 (1900).

The majority opinion ignores the distinction and grants water rights acquired in an eminent domain proceeding a special status. The record reflects that neither the court nor counsel was able to find authority which treats a direct flow decree acquired in an eminent domain proceeding in a manner that would be different than any other decree.

Moreover, the implications of the majority opinion ignore the basic tenet of Colorado water law that there is no "fee simple" in water. *See Coffin v. Left Hand Ditch Co.,* 6 Colo. 443 (1882). Water rights are usufructuary — the *entire* public of the state holds ultimate title to the waters of the state. Any holders of subordinate rights, including those purchased or condemned by a municipality, can exist only by virtue of some appropriation and as explicitly determined by decree. The majority apparently equates the fact that "necessity of holding waters in reservoirs was obvious then as now," with the proposition that the necessity creates the

right. This is not the law. Being so bound, a city cannot be "unquestionably entitled to do what is reasonably necessary to carry out the public purpose for which the water was taken."

In *City of Westminster v. Church*, 167 Colo. 1, 445 P.2d 52 (1968), the City of Westminster had *purchased* both direct flow rights and storage rights from a private party who had historically used the rights for agricultural purposes. The city sought to have the point of diversion of the direct flow rights, and the usage of all the rights, changed to accommodate certain municipal purposes, including water storage. We were then guided by the following language:

"Equally well established, as we have repeatedly held, is the principle that junior appropriators have vested rights in the continuation of stream conditions as they existed at the time of their respective appropriations, and that subsequent to such appropriations they may successfully resist all proposed changes in point of diversion and use of water from that source which in any way materially injures or adversely affects their rights."

*City of Westminster v. Church, supra, quoting Green v. Chaffee Ditch Co.*, 150 Colo. 91, 371 P.2d 775 (1962). *Accord, Farmer's Highline Canal & Reservoir Co. v. City of Golden*, 129 Colo. 575, 272 P.2d 629 (1954); *Enlarged Southside Irrigation Ditch Co. v. John's Flood Ditch Co.*, 116 Colo. 580, 183 P.2d 552 (1947). The court then noted that any direct flow rights were limited by prior historical use of the municipality's predecessor in interest and concluded:

"Defendant City of Westminster could not enlarge upon its predecessors' use of the water rights by changing periodic flow for irrigation to a continuous flow for storage. Such a change would necessarily increase the ultimate consumption from the stream to the detriment of other appropriators."

Accordingly, I would affirm the water judge.

MR. JUSTICE LEE has authorized me to say that he joins me in this dissent.