[No. 5283.]
[No. 2915 C. A.]

## Tubbs v. Roberts.

1.  **Water Rights—Appropriation—Diversion—Application to Beneficial Use.**

    A settler, having constructed an irrigation ditch for the purpose of irrigating his land, later abandoned the land and left the country. Defendant subsequently settled upon the same land, without acquiring any rights from the first settler, and diverted water from the ditch by means of laterals to water a portion of the land. Held, that defendant's right to water dated from the time he diverted the same from the ditch and applied it to the land, and the amount of his appropriation so made was measured by the amount he applied to a beneficial use prior to plaintiff's appropriation from the stream for the irrigation of his lands. —P. 504.

2.  **Appellate Practice — Equity Proceedings — Motion for New Trial—Objection to Reception of Judgment—Necessity of Before Appeal.**

    A motion for a new trial in an equity case and a request for findings or a decree different from those given, is necessary, in order to review the evidence, only where the court refers certain facts to a jury, but where the action is tried to the court and an exception is reserved to the judgment and properly preserved in the record, the evidence as a whole may be examined for the purpose of ascertaining if it will sustain the judgment, even though no objection was interposed to its reception.—P. 505.

3. **Appellate Practice — Pleading — Issues — Theory of Case— Waiver.**

Where a cause was tried on the theory that the matters alleged in the cross-complaint were in issue, it is too late to raise the objection for the first time on appeal that such matters were not traversed by the replication.—P. 506.

4. **Water Rights—Obstructing Use of Water—Measure of Damages.**

In an action for damages for obstructing plaintiff's use of water for irrigation, the measure of damages to his crops is the difference between the amount realized from them and the amount that would have been realized had the water not been interfered with, less the added cost of raising, harvesting, and marketing them.—P. 506.

*Appeal from the District Court of Summit County. Hon. Frank W. Owers, Judge.*

Action by Avery B. Tubbs against D. T. Roberts. From a judgment for defendant, plaintiff appeals.　　　　　*Reversed and remanded.*

Messrs. BELFORD & BELFORD, Mr. HERBERT R. BELFORD, and Mr. W. A. GUYSELMAN, for appellant.

Mr. CHARLES A. WILKIN, for appellee.

On June 21, 1902, appellant, plaintiff below, instituted this action in the district court of Summit county against the appellee, defendant below, praying for an injunction and other relief, on the ground that appellee was unlawfully diverting water from a certain ditch which the plaintiff had constructed, and which he had been using for many years as an irrigating ditch. It is averred in the complaint that, in 1888, the plaintiff began the construction of a certain ditch, particularly describing the same, which he completed on the 21st day of November, 1890; that he is the owner of certain tracts or lots of ground through which the stream, tapped by this ditch, runs, and that the water conducted through this ditch was used to irrigate this land, amounting to something

more than 130 acres; that, on the completion of the
ditch, he posted at the headgate a notice in which he
asserted the right to take 400 inches of water from
South Acorn creek; that he filed with the county
recorder a certificate of location of the ditch, as re-
quired by the then existing law, and that, from com-
pletion of the ditch on November 21, 1890, until
June 4, 1902, he had continuously used the water so
appropriated through said ditch for irrigating the
lands described; that on the 4th day of June, 1902,
appellee Roberts, designing to injure the plaintiff
and without any right so to do, entered upon plain-
tiff's land at a point about 100 yards above the head
of plaintiff's ditch, where the same takes water from
South Acorn creek, and constructed a ditch from said
point above plaintiff's ditch, whereby he diverted
the waters of said creek from such point above to a
point below plaintiff's ditch for the purpose of using
for his own profit and benefit the waters belonging
to the plaintiff; that, by reason of the acts of the
defendant, the plaintiff was deprived of the water
he had been accustomed to use, and that his crops
had been greatly damaged thereby.

To this complaint the defendant interposed an
answer and cross-complaint. The answer denies
every allegation contained in the complaint, except
the construction of the ditch by Roberts, as set forth
in the complaint. In his second defense and cross-
complaint, the defendant alleges that he is the owner
in fee simple and in possession of certain described
lots and parcels of land, and has been in the lawful
and exclusive possession of said premises contin-
uously since the early part of the year 1888. He
further alleges that in the year 1883, one J. Q. Davis
was in the lawful occupancy, use and enjoyment of
said premises, and that in that year he commenced
the construction of a ditch from the natural stream

called Acorn creek, flowing through or near said premises, of which South Acorn creek, mentioned in the complaint, is the principal constituent, with which to apply the water of said Acorn creek to the irrigation of said premises, and commenced to use the water for domestic purposes, and continued to use water for such purposes during the years 1883 to 1888, inclusive, when, in 1888, the said Davis bargained and sold, conveyed and delivered over to the defendant his possession and right of possession of said premises, his buildings, fences and other improvements, and also the ditch improvement and the irrigation use right and the domestic use right aforesaid, for the use by him upon said premises, by means of said ditch, and otherwise of the natural stream, and that the defendant took over from said vendor Davis the said premises and water uses, and succeeded him in possession and enjoyment of the same, and that he now has the fee simple title to said premises.

It is further alleged that in 1885 Davis made a certificate for a water claim, which was duly filed with the county recorder, in which the course of the ditch was set out by metes and bounds, and that the capacity of the ditch was stated to be four and one-half cubic feet per second, and that said ditch reached the premises above described; that his lands are agricultural and pasture lands, and that, since he has lived on his land, he has, from year to year, used this water to irrigate from twenty-five to fifty acres of this land, and that Davis, before him, had farmed and irrigated from twenty to thirty acres; that the Davis ditch was the oldest ditch, and that he succeeded to all of Davis's rights; that he has been greatly damaged by the use of the water by plaintiff, and claims damages and prays a perpetual injunction against plaintiff.

To this answer and cross-complaint plaintiff filed his replication, denying that Roberts ever purchased or acquired any water right from Davis, or any ditch right; denies that Davis lived on the lands, now claimed by Roberts, in 1888 and 1889; denies that Davis ever used the water for domestic purposes, or that he ever used fifty inches of water for domestic purposes, or any other amount, or two hundred inches for irrigating purposes, or any other amount exceeding twenty-five inches, and that this amount was not used on land now occupied by the defendant.

The issues were tried to the court. The court found that defendant was the successor of Davis, and that his rights were anterior to those of plaintiff; that the defendant is entitled to fifty inches of water for domestic purposes and two hundred inches of water for irrigating purposes, and awarded damages in the sum of $1,000.

Davis, from whom Roberts claims to have purchased his water rights, and who constructed the ditch above mentioned, testifies that he settled on the west side of the Blue river in 1882; claimed 160 acres, most of which was on the west side and across the river from the natural stream from which the irrigating ditches in controversy take their water; that the smaller part of the land was on the east side of the Blue river, and it was for this land that the ditch was taken out by him in 1886.

"Q. How much water did you actually use through this ditch? A. Sometimes, when there was a big flow, it had probably a couple of feet.

"Q. How many inches? A. Would be 228 inches.

"Q. How much land did you have under irrigation? A. About five acres.   *   *   *

"Q. How long did you continue to reside on that tract of ground? A. From '82 to '89.

"Q. What did you do with the land when you left? A. Just let it lay there.

"Q. Just abandoned it, did you? A. Yes, sir."

He further testified that he left the country; had no intention of returning at all, and did not know who took possession of the land after he left it; that he had no business relations or any other relations at the time with Mr. Roberts, the defendant.

On cross-examination, he testified that he did not use the water for domestic purposes, that he used it for irrigation only; that he did not extend or increase that use from year to year up to the time he left; that he did not raise anything else than timothy, and that he left the land in February, 1899.

The defendant testified that in June, 1888, he built a cabin on his land near the Davis ditch. In 1889 he and his wife resided on this land; that to secure water for domestic purposes he constructed a lateral from the Davis ditch to the cabin. He says that he used the water only for domestic purposes in 1888; that in 1889 he used for irrigating purposes all the water that came down the creek; that the water was short that year; that he had about six acres of oats in cultivation and some potatoes and garden produce; that he used through the ditch for irrigation about one hundred inches; that in the year 1890, he put in a crop of about six acres, and used about one hundred inches of water; that in 1891 he put in a crop of about five acres.

"Q. Now, Mr. Roberts, you say you brought the water onto your land by a lateral running from the Davis ditch? A. That is for home use, small lateral.

"Q. How much did that lateral carry? A. That will carry about fifty inches of water.  *  *  *

"Q. Well, did you build any laterals beside this? A. Yes, sir.

"Q. How many? A. I took out several small ones. They were laterals from the Davis ditch.

"Q. In what years did you do that? A. I did that in 1889, '90, '91, and so on afterward.

"Q. How much did you take out in 1889? A. In '89 the water was pretty high for a short time in the spring. I think they used about one hundred inches, and it was pretty high it got.

"Q. You took it from the Davis ditch—you didn't build any ditch to connect with Acorn creek in '88, '89, '90? A. I did last summer.

"Q. No, but I say in '88, '89 or '90? A. No.''

The court found in favor of the defendant upon his cross-complaint, and decreed to him a priority to the use of the water in question to the amount of fifty inches, statute measurement, or one and one-quarter cubic feet per second of time for domestic purposes, and in the amount of two hundred inches, statute measurement, or five cubic feet per second of time for irrigation purposes, and awarded him $1,000 damages. To obtain a review of this judgment, plaintiff below prosecutes this appeal.

Mr. Justice Goddard delivered the opinion of the court:

Upon a careful examination of the record, we are unable to find any evidence to support the decree rendered. The defendant acquired no right, by conveyance or otherwise, to the Davis ditch, or to any right acquired by Davis by his appropriation and the use of water through and by means of such ditch. He did not make, or attempt to make, any appropriation of water from the natural stream.

Whatever right, therefore, he may have to the use of the water is measured by the amount or quantity he diverted from the Davis ditch through the laterals he described, and applied to beneficial uses before an appropriation thereof, if any, was made by plaintiff.

The quantity of water so diverted, according to his testimony, did not at any time exceed fifty inches for domestic, and one hundred inches for irrigation, purposes. In these circumstances, the amount of water awarded defendant was excessive, even if it be assumed that the defendant initiated a right to the full amount of water he actually diverted and used prior to the date of the appropriation claimed by plaintiff. It therefore becomes unnecessary to consider any other question touching the relative rights of these parties.

It is contended by counsel for appellee that the sufficiency of the evidence to support the decree cannot be considered under the assignments of error upon this review:

1.  Because no motion for a new trial was interposed in the trial court, nor any request for findings or a decree different from those given. In support of this contention counsel rely upon *Hall v. Linn,* 8 Colo. 264, and *Hall v. Rockwell, Ibid.* 103. The rule announced in these cases is applicable only where the court refers certain facts to a jury in an equitable action, but in an equitable action tried to the court, when an exception is reserved to the judgment and properly preserved in the record, the evidence as a whole may be examined for the purpose of ascertaining if it will sustain the judgment, even though no objection was interposed to its reception.—*Jerome v. Bohm,* 21 Colo. 322; *Phelps v. Spruance,* 1 Colo. 414; *Breen v. Richard-*

*son,* 6 Colo. 605; *Burnell v. Wachtel,* 4 Colo. App. 556.

2. Because the replication did not traverse the substantial allegations of the cross-complaint, including that of damages, except the averment that the defendant acquired the right to the ditch and appropriation made by Davis. It is sufficient to say that this question was not raised in the court below, but the parties proceeded with the trial upon the theory that all the allegations in the cross-complaint were in issue. Having thus proceeded as though the matters alleged in the cross-complaint were in issue, it is too late now to raise the objection for the first time that in fact they were not traversed by the replication.—*Jerome v. Bohm, supra; Quimby v. Boyd,* 8 Colo. 194; *Robinson Reduction Co. v. Johnson,* 10 Colo. App. 135, 139.

The evidence introduced in support of plaintiff's claim for damages was inadmissible under the rule laid down by this court and the court of appeals in the following cases: *N. C. Irri. Co. v. Richards,* 22 Colo. 450, 458, 460; *Colo. Con. L. & W. Co. v. Hartman,* 5 Colo. App. 150.

For the foregoing reasons the judgment will be reversed and the cause remanded.          *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.