No. 18,079.

D. E. SHAWCROFT, ET AL. *v.* THE TERRACE
IRRIGATION COMPANY.
(333 P. [2d] 1043)

Decided December 22, 1958.   Rehearing denied February 2, 1959.

Mr. JOHN IRA GREEN, Messrs. MOSES & DESOUCHET, for plaintiffs in error.

Mr. CHARLES R. CORLETT, Mr. HENRY BLICKHAHN, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

The Terrace Irrigation Company, to which we will hereinafter refer as petitioner, filed its petition in the district court of Conejos county by which it sought a decree authorizing a change in the point of diversion of water from the Alamosa river.

Plaintiffs in error protested the granting of the relief sought. In their answer they denied the allegations of petitioner and alleged affirmatively that the proposed changes in diversion points would work injury to them in many ways. They also sought a decree that water claimed by petitioner under priority No. 76, the Davies-Chapman Ditch, had been forfeited by abandonment.

The trial court denied protestants' prayer for judgment that priority No. 76 had been abandoned; denied petitioner's prayer to change the point of diversion of water owned under priority No. 85; and granted all other changes requested by petitioner. Judgment was entered accordingly and protestants, seeking reversal, bring the cause here for review by writ of error.

Counsel for protestants advance numerous arguments in support of their contention that the judgment should be reversed. They freely admit, however, that the ground upon which they chiefly rely is that the change in the point of diversion, which the trial court approved, will result in a greatly enlarged use of the water decreed to petitioner, to the prejudice of junior appropriators downstream who are entitled to a continuance of the river conditions that existed at the time their own priorities were acquired.

An understanding of the facts pertinent to this issue involves a painstaking analysis of a very large record and a most unusual course of conduct in irrigation practices by the petitioner in applying decreed water to beneficial use.

The decree of the trial court granted a change in the point of diversion of a total of 81.80 cfs of water from

various headgates where the water has by decree been ordered withdrawn. The new diversion point would be moved upstream to a point 4½ miles from the existing diversion point which is farthest downstream. The transfer in point of diversion would authorize the withdrawal of 81.80 cfs at the headgates of the Terrace Main Canal. At this point petitioner has the right to divert in excess of 300 cfs of water under other adjudicated priorities in addition to the 81.80 cfs involved in the transfer of diversion point authorized by the trial court.

█ The statute which must be considered by a court in authorizing a change in the point of diversion of water is C.R.S. 1953, 147-9-25, from which we quote the following:

"If it shall appear that such change will not injuriously affect the vested rights of others, the change shall be permitted by the decree to be given by court. If, however, it appears that such change will injuriously affect the vested rights of others, the court shall deny the application unless the court is satisfied that by the imposition of terms and conditions such injurious effect may be prevented, in which case the court shall decree the change upon such terms and conditions."

In *City of Colorado Springs v. Yust, et al.*, 126 Colo. 289, 249 P. (2d) 151, this court said, inter alia:

"Right to change the point of diversion is one of the incidents to ownership and exists independently of statute (*Lower Latham Ditch Co. v. Bijou Irr. Co.*, 41 Colo. 212, 93 Pac. 483), but is properly subject to a statutory regulation."

For many years prior to this action petitioner has not diverted the water to which it is entitled at the points where the several decrees awarding it direct that it be withdrawn. In disregard of such directions the water has been withdrawn either at the Terrace Main Canal or the Alamosa Creek Canal, depending upon the location of the particular land to which the water was applied at any given time. It is admitted that the diversion of all

the petitioner's decreed water was "rotated" in such fashion that water decreed for diversion at the Terrace Main Canal was frequently permitted to flow downstream 4½ miles to the Alamosa Creek Canal and was diverted at that point. At other times water decreed to the Alamosa Creek Canal was diverted into the Terrace Main Canal 4½ miles upstream. Other water, the diversion of which was fixed by decree at other points, was not diverted at those points but was taken from the stream either at the Terrace Main Canal or the Alamosa Creek Canal at the election of the officers of the petitioner. It is not contended by any of the parties that there was any decreed authority for this practice. In practical effect the prayer of petitioner is for the entry of a court decree approving, for the future, the diversion of the water in the same manner as it has been diverted heretofore. The petitioner asked the trial court to approve the alternate points of diversion under which the water would be withdrawn by "rotation" between the Terrace Main Canal and the Alamosa Creek Canal, or, in the event that this request was refused, that the diversion point for all the water be moved upstream to the headgate of the Terrace Main Canal. The trial court denied the prayer for alternate points of diversion. No cross error is assigned by petitioner and we are accordingly concerned only with approval, by the trial court, of the change of diversion to the Terrace Main Canal.

For the reason that the chief objection of counsel for protestants is that the proposed change would result in an enlarged use of the water in time and volume as against that which would obtain if the water is diverted where decreed, it becomes most important to determine whether the petitioner has in the past applied to beneficial use all the water to which it was entitled at all times when it was available. Counsel point up the importance of this matter by the following statement taken from the brief of protestants:

"We have already referred to Mr. Walker's testimony

that the Terrace Company used all of its decrees at all times. If this were true, there would be no enlarged use regardless of the additional 3680 acres being irrigated, and protestants could not complain on this score."

The witness Walker testified that he had been superintendent of the petitioner for six years. The following is taken from his testimony:

"Q. Now the amount of water diverted does the Terrace Irrigation Company divert the entire — well what amount of its priority to which it is entitled does the Terrace Irrigation Company divert at any ·particular time? A. All of it. Q. Is that true at all times? A. Yes."

However, it appears beyond question from records of the division engineer that large quantities of water decreed to petitioner under various priorities were not used at all times when available. It thus appears conclusively that junior appropriators have been receiving benefits from unused decrees which would be lost if the upstream changes in the points of diversion to the single intake at the Terrace Main Canal is upheld.

▮ Counsel for petitioner assert in their brief that there may have been good reasons why the water was not fully used at the numerous times and places when it was available, to which the attention of the court is directed by reference to the reports of the division engineer. Among other speculations it is asserted that the ditches may have been under repair, or that the Water Commissioner may have failed to advise that the water was .available, or that there might have been an error on the part of someone charged with the measurement of the water, etc. There is no evidence on which to base any of these speculations. The burden to establish any such explanation was not on the protestants, but on the petitioner. .

We next examine the record to determine whether protestants' claim that the proposed change in point of diversion will result in an enlarged use, both in time and volume, of the water decreed to petitioner. In reaching

an answer to the questions presented in this connection one must examine the record carefully and not become confused by the testimony of witnesses who assert that after the change in decreed point of diversion the same land would be irrigated that has been irrigated in the past. It is undisputed that the land in question has heretofore been irrigated by water that has been withdrawn from the stream at a point other than the diversion point provided by court decree.

While we do not base our determination solely on the following testimony, we think it bears significantly upon the question, coming as it does from the superintendent of petitioner. From the testimony of Mr. Walker, on cross-examination, we quote the following:

"Q. I understand that, Mr. Walker, but I am saying if you had not been running it in the way which you have been, and I don't think anybody here claims that's been proper, if you had been diverting your water where the decrees said you were supposed to divert it you could not have irrigated this 3680 acres of land with water now supposed to be diverted at the Alamosa Creek Canal could you? A. No. Q. So that water that is now supposed to be diverted at the Alamosa Creek Canal would be applied to 3680 acres more land than it is presently supposed to be applied to, isn't that right? A. Well after a fashion it might be but then there is also lands under the Alamosa Creek Canal that are watered through — water that comes through the Terrace Main. In other words we consolidated it, it has all went to the same places. Q. I think if you will just talk about diversions according to the decrees and not talk about the practices you have been following that we won't get confused? A. Yes."

We might lengthen this opinion by several pages in pointing out that a number of the priorities located downstream are early priorities and are senior to the priorities with decreed diversion points at the Terrace Main Canal. Thus the change in diversion point of all

petitioner's water to the upstream Terrace Main Canal would open the 3680 acres to irrigation at times when it could not occur if only the later decrees were diverted at that point. Upon examination of the whole record we are convinced that the objections of protestants are well founded and that the trial court erred in granting the request for change in the points of diversion.

In concluding this opinion we direct attention to the following quotation from the opinion of this court in the case of *Baker v. City of Pueblo,* 87 Colo. 489, 289 Pac. 603:

"By repeated decisions of this court, and our former Court of Appeals, an appropriator of water from a natural stream in this state for the irrigation of agricultural lands, who seeks to change the point of diversion of the same, assumes, and must sustain, the burden of showing that the vested rights of other appropriators, particularly of junior appropriators, are not infringed. Some of our cases so deciding are *Bates v. Hall,* 44 Colo. 360, 371, 98 Pac. 3; *Vogel v. Minnesota Canal C. & R. Co.,* 47 Colo. 534, 107 Pac. 1108; *Fort Lyon Canal Co. v. Chew,* 33 Colo. 392, 81 Pac. 37. In the Vogel case, at page 541 of the opinion, Mr. Justice Bailey said: 'This court has often said, in substance, that a junior appropriator of water to a beneficial use has a vested right, as against his senior, in a continuation of the conditions on the stream as they existed at the time he made his appropriation. If this means anything, it is that when the junior appropriator makes his appropriation he acquires a vested right in the conditions then prevailing upon the stream, and surrounding the general method of use of water therefrom. He has a right to assume that these are fixed conditions and will so remain, at least without substantial change, unless it appears that a proposed change will not work harm to his vested rights.'

"In *Farmers' Co. v. Wolf,* 23 Colo. App. 570, 131 Pac. 291, referring to this declaration of Judge Bailey, Judge King, the writer of the opinion, said at page 581: ' * * *

It is a matter of common knowledge that, except on streams in which the appropriations have not exceeded the constant supply, few instances arise in which the change of place of diversion of large quantities of water, for a long distance, can be made without substantial injury to juniors, and the utmost care and scrutiny [should be exercised] to guard against such injury.' "

We note that protestants state in their brief that they have no objections to certain changes in the points of diversion of water under priorities numbered 8, 15, 37, 39, 45, and 76. This opinion shall not be construed to prevent such changes to which protestants may agree.

If the interested parties desire to do so, further proceedings may be had to determine the amount of additional use and to order adequate compensation to the stream for the damage which would result if the diversion of petitioner's water is permitted to be transferred as prayed for.

The judgment is reversed.