## No. 23506

Zacarias Atencio, Lavern N. Bagwell, Lester Bagwell, Luther Bagwell, Victorio Barela, Juan I. Perea, David E. Broyles, Joe E. Casias, Candido Cisneros, Alfredo Duran, Antonio Duran, Mrs. Augustine Duran, Fermin Duran, Jerry Duran, J. P. Balois Duran, Gusman B. Gallegos, Clarence Garcia, Gaspar Garcia, Gilbert Garcia, C. Perry Johnson, Antonio Lucero, The Manassa Land and Irrigation Company, Tony Marquez, Jr., Antonio D. Martinez, Benjamin Martinez, Claudio Martinez, Edumenio Martinez, Edward Martinez, Maclovio Martinez, Pat Martinez, Teodoro Martinez, Pete Middlemist, Leo A. Quintana, A. J. Romero, Bonnie E. Romero, Felipe Romero, P. C. Romero, Carlos B. Ruybal, Maclovio Salas, Terencina Sanchez, Candido Sandoval, Candido S. Sandoval, Clemente Sisneros, Joe D. Sandoval, John Sandoval, Euphemia Valdez, Jacobo Vigil, Ruben Vigil; T-Bone Ranch Company, an Illinois corporation v. Richfield Canal Company, a Mutual Ditch Company.

(492 P.2d 620)

Decided January 10, 1972.     Rehearing denied January 31, 1972.

Raphael J. Moses, George Vranesh, for plaintiffs in error.

Henry Blickhahn, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

A unique water appropriation issue is presented on this writ of error. It can best be described and understood by briefly setting forth the fact situation involved.

Richfield Canal Company, the trial court defendant and the defendant in error here, is the owner of Priority No. 105 dated 1885 for 112.5 c.f.s. of water from the Conejos River. The decreed diversion point is approximately 250 ft. upstream from the confluence of the San Antonio and Conejos Rivers. At the time of the appropriation, there was a rock dam located at the confluence of these rivers. It performed the function of a check structure to raise the water level and

thus, permit water to enter Richfield's headgate. The water at the headgate was usually a mixture of San Antonio and Conejos River water because the check structure compelled the water of the San Antonio to backwash on the Conejos up to Richfield's headgate. In the spring of each year, the San Antonio River is in flood stage much earlier than the Conejos River. Apparently, during this interim time, a major portion of the checked water was from the San Antonio.

In 1909 or 1910, a flood washed out this rock dam and thereby rendered Richfield's decreed headgate useless. Thereafter, no efforts were made to reconstruct this dam for over 50 years and the headditch became filled with willows, cottonwood trees, and debris. Richfield diverted its claimed water through other points of diversion. This was done with the consent of the owners of the other diversion works and was apparently done by permission of the district water officials. The plaintiffs, owners of later dated rights on the San Antonio River, had no knowledge of calls being made on their water rights to satisfy Richfield's No. 105 priority during this time. As will be noted in more detail hereinafter, at whatever points Richfield secured its decreed water, it apparently made no use of San Antonio water, since approximately 1909, according to the trial court's findings in Case No. 2798, which is described and discussed in the following paragraphs.

In 1959, Richfield instituted a petition in the trial court for a change in point of diversion for Priority No. 105 to the headgate of the Sanford Ditch, which is located downstream from the confluence of the San Antonio and Conejos Rivers. This petition was successfully opposed by practically all of the water users on the San Antonio River, most of whom are also the plaintiffs here. In this prior case, which will be referred to as Case No. 2798, the trial court, in denying Richfield's petition to change its point of diversion to the Sanford headgate, made comprehensive findings of fact. The most significant of these findings, for the purposes of the present case, is that since the headgate for Priority No. 105 had been rendered useless in 1909 or 1910, no attempt had

been made by Richfield "to intercept any of the waters of the San Antonio River." The record of Case No. 2798, including a transcript and exhibits, was admitted as an exhibit in the present case. No appeal was taken from the judgment of the trial court in Case No. 2798.

In 1964, or approximately four years after the entry of judgment in Case No. 2798, Richfield reconstructed the dam and reactivated the headgate at the decreed point of diversion for Priority No. 105. Then for the first time in over 50 years, Richfield called upon the water officials to curtail the diversions by appropriators, including those on the San Antonio, in order to fill its appropriation.

The plaintiffs in error, plaintiffs below, initiated the instant case in the trial court to enjoin Richfield from making any use of the dam which would interfere with their water rights on the San Antonio. Their complaint also prayed for damages in the amount of $100,000 allegedly suffered by the plaintiffs because they were required "to withhold diversions of waters to which they were lawfully entitled." After the presentation of evidence, the trial court held in favor of Richfield thereby denying any injunctive relief for the plaintiffs and their claim for damages. On this writ of error, the plaintiffs seek reversal of the trial court's judgment. Our review and study of the record convinces us that the judgment must be reversed.

The essence of the trial court's judgment in Case No. 2798 was that the requested change in point of diversion would be injurious to the appropriators on the San Antonio River. Because there was no adequate way in which to compensate these appropriators for this injury to their water rights, the trial court denied the change in point of diversion. More specifically, the trial court in Case No. 2798 declared that since the dam was destroyed, there has been no attempt by Richfield to intercept any of the waters of the San Antonio River. Implicit in this decision is the concept that while Richfield's water right under Priority No. 105 may have originally included waters of the San Antonio River, there had been no effort made for over 50 years to intercept the

waters of the San Antonio in satisfaction of Richfield's appropriation, and San Antonio water could not after such a long time be used to the detriment of the appropriators on the San Antonio River. Although the court found that Richfield had not abandoned its water right on the Conejos, it also declared that Richfield had abandoned its original headgate due to over 50 years of nonuse and the fact that no attempt had been made for over 50 years to rebuild the rock dam and restore the diversion ditch. The judgment in Case No. 2798 was never appealed from and it is therefore final and binding upon the parties to that action. This applies with particularity to the finding that San Antonio water had not been used by Richfield for over 50 years and that the current resumption of its use would be an illegal interference with the water rights of the appropriators on the San Antonio. It was basically upon this finding and conclusion that the court refused to permit a change in point of diversion which would involve any use of San Antonio water.

The trial court in the present case seemingly ignores the basic premise upon which the trial court in Case No. 2798 refused to authorize a change in point of diversion to the headgate of the Sanford Ditch. It is our view, that the trial court also misconceived the entire thrust of the present case. The plaintiffs were not objecting *in toto* to Richfield's reconstruction of the dam and diversion of water at the original decreed point of diversion. What the plaintiffs do object to, and seek to have enjoined, is any use of the dam and diversion works in a manner which would interfere with their water rights on the San Antonio River.

■ The plaintiffs have the right to rely on maintenance of stream conditions as they existed at the time they made their appropriations. *DeHerrera v. Manassa Land & Irrigation Co.,* 151 Colo. 528, 379 P.2d 405; *Shawcroft v. Terrace Irrigation Co.,* 138 Colo. 343, 333 P.2d 1043; *Farmers Co. v. Golden,* 129 Colo. 575, 272 P.2d 629; *Vogel v. Minnesota Canal Co.,* 47 Colo. 534, 107 P. 1108.

■ The record reveals that the plaintiffs, in reliance upon available water in the San Antonio and the absence of any

physical means to divert that water to Richfield's decreed headgate, appropriated water of the San Antonio to beneficial uses on their lands. The plaintiffs testified that they have invested large sums of money in their lands and diversion systems in reliance upon the availability of water. There is no dispute in the record that Richfield has possessed no physical means of diverting any San Antonio River water for over 50 years. Any San Antonio water which might have ultimately reached Richfield did so not only through the medium of Sanford's headgate, but also, through the medium of Sanford's appropriation. There is testimony of the water officials that all water entering the Sanford headgate was charged to the Sanford appropriation. More importantly, for over 50 years, water users on the San Antonio were never shut down in order to supply San Antonio water to Richfield. The law is clear that a water user cannot gain rights against other users by illegal diversions, especially those which the latter are unaware of. *Shawcroft v. Terrace Irrigation Co., supra; DeHerrera v. Manassa Land & Irrigation Co., supra; Dry Creek No. 2 Ditch Co. v. Coal Ridge Ditch Co.,* 109 Colo. 556, 129 P.2d 292; *Cache la Poudre Irrigation Ditch Co. v. Hawley,* 43 Colo. 32, 95 P. 317.

Although this point was not stressed in the briefs or in oral argument, we note that Richfield's decreed water right was to *Conejos* River water and was to be taken from that river at a point above its confluence with the San Antonio River. The decree does not mention San Antonio water at all.

Under these circumstances, it would be grossly unreasonable and unfair to allow Richfield to make any use of its newly constructed dam and diversion works which would allow it to make calls on San Antonio River water to the detriment of the appropriators on the San Antonio. The plaintiffs have stated that they have no objection to Richfield using the dam to catch flood waters and return flows from the San Antonio.

An enlightening comment applicable to the issue here is set forth in *C. Kinney, Irrigation and Water Law* (2d ed.) § 1108 as follows:

"It is held by the authorities that old and abandoned ditches may be used in making new appropriations. But it is further held that when one made such use of an abandoned ditch his right does not succeed to the old water right used in connection with such ditch, but stands alone upon the merits of its own individual appropriation."

In support of this proposition, Kinney cites *Tubbs v. Roberts,* 40 Colo. 498, 92 P. 220.

To summarize the law of this case, we hold that Richfield can make only such use of the newly constructed dam and reactivated diversion works as will not interfere with the plaintiffs' lawful rights to San Antonio River water. The plaintiffs have acquired their San Antonio rights in reliance upon the fact that for over 50 years it has been physically impossible for Richfield to make any legal use of that water. In Case No. 2798, the court recognized this fact and denied a change in point of diversion which would have allowed Richfield to make calls upon San Antonio water. What Richfield was denied in that case, it cannot now achieve in an indirect fashion by reconstructing a facility which was effectively abandoned over 50 years ago, and which would allow it to do what it was previously denied the right to do.

In their complaint, the plaintiffs also asked for damages because they were required to withhold diversions of waters to which they were lawfully entitled. On remand, the trial court should conduct such further proceedings as it deems necessary in order to make a final determination of all the issues of this case.

Reversed and remanded for further proceedings in accordance with the views expressed herein.

MR. JUSTICE DAY, MR. JUSTICE KELLEY and MR. JUSTICE LEE concur.